UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| RISEN ENERGY CO., LTD. | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | Court No. 20-3743 |
| UNITED STATES, | | |
| Defendant. | | |

**COMPLAINT**

On behalf of Risen Energy Co., Ltd. ("Risen"), a Chinese producer and exporter of Crystalline Silicon Photovoltaic Cells, we hereby bring this civil action and allege the following:

**Parties**

1. Risen Energy Co., Ltd. ("Risen") is a Chinese producer and exporter of Crystalline Silicon Photovoltaic Cells ("Solar Cells") and was a mandatory respondent in the sixth solar cells antidumping administrative review for the period December 1, 2017 through November 30, 2018.

2. Defendant is the United States of America acting by and through the U.S. Department of Commerce (the "Department").

**Jurisdiction**

3. This action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (2)(B)(iii) to contest the Department's final results of the administrative review under 19 U.S.C. §1675. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the*

1

*People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018*, 85 Fed. Reg. 62,275 (October 2, 2020) ("Final Results"), *incorporating* Issues and Decision Memorandum ("Final IDM"). Accordingly, this Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

**Standing**

4. Risen is a foreign producer and exporter of subject merchandise. The subject merchandise includes solar cells as well as modules, laminates, and panels consisting of solar cells. Risen exported only solar modules to the United States. Risen participated as an individually examined mandatory respondent in the antidumping administrative review resulting in the contested Final Results. Accordingly, Risen is an interested party within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A).

5. In addition, because the Department's Final Results overstated Risen's antidumping duty margin, Risen has been adversely affected and aggrieved by agency action within the meaning of 5 U.S.C. § 702. Therefore, Risen has standing to bring this action under 28 U.S.C. § 2631(c).

**Timeliness**

6. Notice of the Final Results was published in the Federal Register on October 2, 2020. Risen filed the summons instituting this action on October 9, 2020, *i.e.*, within 30 days of publication of the Final Results, serving notice of the action upon all other participants in the investigation on the same date. Thirty days from October 9, 2020 is November 8, 2020. Accordingly, Risen is timely filing this complaint and has commenced this action within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rule 3 of the Rules of this Court.

**Facts**

7. On March 14, 2019, the Department initiated the sixth administrative review of the antidumping duty order on Solar Cells from China. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 9,297 (March 14, 2019) (Initiation Notice).

8. Based on responses to quantity and value questionnaires, the Department selected Risen and Changzhou Trina Solar Energy Co., Ltd. ("Trina"), the two companies accounting for the largest volume of entries, as mandatory respondents. *See* Dep't of Commerce, Memorandum re: *Respondent Selection* (May 6, 2019). Risen had also been a mandatory respondent in the fifth administrative review obtaining a final margin of **4.70 percent**. *Crystalline Silicon Photovoltaic Cells Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*, 84 Fed. Reg. 36,886 (July 30, 2019), which was appealed by both Risen and petitioner consolidated under *Risen Energy Co., Ltd. v. United States*, CIT Ct. No. 19-00153. Trina was a mandatory respondent in the fourth administrative review obtaining a final margin of **15.85 percent**, which was also appealed by Trina and petitioner consolidated under *Changzhou Trina Solar Energy Co. v. United States*, CIT Ct. No. 18-00176. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2015-2016*, 83 Fed. Reg. 35,616 (July 27, 2018). The calculated margins in the all reviews of the Order before the segment on appeal have all been relatively low, with the separate rate under **16 percent**.

9. Because this review involves a nonmarket economy order, the Department generally does not use respondents' actual cost records to value its inputs, home market sales, and financial statements for the purposes of calculating the normal value (a special form of

constructed value particular to nonmarket economy investigations). Rather, the Department selects surrogate values from a surrogate country. As the starting place for selecting a surrogate country, the Department provides a list of potential countries within a certain range of *per capita* GNI to China (i.e. economically comparable to China) that the Department purports are most likely to have good data and availability.

10. In the investigation and first through fifth administrative reviews, the Department relied upon Thailand as the primary surrogate country. In this sixth review, the Department no longer considered Thailand to be economically comparable to China, and therefore Thailand was not listed as a potential surrogate country. Rather, based on 2017 GNI data, the Department's surrogate country list consisted of Romania, Malaysia, Russia, Mexico, Brazil, and Kazakhstan.

11. The Department also provided an opportunity for parties to propose that other countries are at a level of economic development comparable to China and should be considered as potential surrogate countries. This is determined by the GNI of the "bookend" countries in the Department's proposed list, i.e., Romania and Kazakhstan. Risen timely noted that Bulgaria is economically comparable to China (because its GNI per capita falls within the bookends if equal above and below China) and should be considered as a potential surrogate country. *See* Risen GNI List Comments (August 12, 2019). During the course of the review, 2018 GNI data also became available and the Department found Bulgaria to be economically comparable based on this data.

12. Parties subsequently submitted surrogate country comments and surrogate value data. Petitioner argued that Malaysia or Brazil should be selected as the primary surrogate country and submitted Malaysian and Brazilian surrogate values. Respondents argued that Bulgaria or Romania should be selected as the primary surrogate country and submitted

Bulgarian and Romanian surrogate values. Due to available financial statements, ultimately petitioner focused its submissions on Malaysia and respondents focused their submission on Bulgaria.

13. As the record developed, respondents argued that Bulgaria should be selected as the primary surrogate country because of two data key quality issues in Malaysia: 1) a highly aberrant silver paste surrogate value in Malaysia and 2) a less specific solar glass surrogate value in Malaysia.

14. In considering whether a particular import surrogate value is aberrant, it is the Department's longstanding practice to compare the surrogate value to the other listed surrogate countries' import values. The Department has previously found a particular surrogate value was aberrant when higher than the listed surrogate countries import values by a few hundred percent. This Court has also directed the Department that an import value was evidently aberrant when higher by 60% to 200% than the other contemporaneous import values on record.

15. Following established practice, Risen submitted import data for HTS 7115.90, the HTS relied upon to value silver paste, for the listed surrogate countries as well as Bulgaria. Based on this contemporaneous data, the Malaysia silver paste import value was over 6,000% higher than average import price into the other economically comparable countries. The record also contained other corroborating information, namely the historical surrogate values in Thailand relied upon by the Department in prior reviews, Trina's own market economy purchases of silver paste, and a U.S. Energy report on the relative cost of various elements, including metallization pastes (silver and aluminum pastes) of solar module production.

16. Despite this overwhelming information, in its Preliminary Results, the Department relied upon Malaysia as the primary surrogate country and relied on the highly

aberrant Malaysian import value for silver paste. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assemble, From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments*, 85 Fed. Reg. 7,531 (February 10, 2019), *incorporating* Preliminary Decision Memorandum ("Prelim. Decision Memo"). Risen's preliminary margin thus was **75.23 percent**, a stark demonstration of the effect of applying the aberrant silver paste surrogate value to its consumption of that input.

17. Despite timely submitting comments on the economic comparability of Bulgaria, in the Preliminary Results, the Department did not consider Bulgaria as a potential surrogate country purported because Bulgaria was not on the initial surrogate country list by name (i.e., was not one of the six countries named by the Department as likely to have quality surrogate value data). This was inconsistent with Department practice.

18. In conjunction with the Preliminary Results, i.e., after the factual record closed to the parties, the Department <u>itself</u> submitted Malaysian import data for silver paste (HTS 7115.90) for the last three years. The Department gave the parties no opportunity to file rebuttal information on this new set of facts, contrary to its regulatory obligation to do so. Despite information and arguments made by respondents that the Malaysian silver paste value was aberrant, petitioner had not provided any corroborating information to support the reliability of the silver paste import value. The Department stated that the Malaysian import value was reliable because the historical import value into Malaysia (from years when Malaysia was not economically comparable to China) was similar to the POR Malaysian import value.

19. Risen timely filed its case brief, urging the Department to find that the Malaysian silver value was aberrant. The Department has an established practice of determining whether a

surrogate value is aberrant by comparing it to the import values in the other listed surrogate countries. Risen demonstrated that the Malaysian import value was 6,305% higher than average import price into the other countries. In the past, the Department has on average found values that are a few hundred times higher than the listed surrogate countries' import values are aberrant.

20. Risen also demonstrated that the Malaysian import value was 1,322% higher than the surrogate value for this input relied upon by the Department in the last several reviews. Risen also used Trina's market-economy purchases of silver paste, which are actually specific to the input unlike the more general HTS, as a benchmark demonstrating the high aberrancy of the Malaysian import value. Lastly, Risen pointed to the U.S. Energy report on the cost of solar module production from the POR, that showed metallization pastes (silver and aluminum pastes together) account for 3.76-5.07% percent of the cost of the solar module. In contrast, relying on this Malaysian silver paste value made the cost of silver paste alone approximately 45% of Risen's cost of manufacturing the entire solar module. This is contrary to any conceivable commercial practice to manufacture solar modules.

21. Risen also argued that the Department should rely upon Bulgaria as the primary surrogate country because Bulgaria had usable surrogate values for <u>all</u> inputs and had a glass surrogate value that was specific to solar glass and that was also reported in the same unit of measurement as the unit of measure reported by respondents based on their books and records. In the Preliminary Results, the Department claimed it would not consider Bulgaria because Bulgaria was not economically comparable and the record contained surrogate value records from countries that were economically comparable. However, as Risen had timely provided information that Bulgaria is economically comparable, the Department should have considered

7

the relative data quality of Bulgaria in selecting a surrogate country. Further, as also presented by Risen, Bulgaria was within the 2017 GNI range of the Department surrogate country list, was on the 2018 GNI list which overlaps with the majority of the POR, and in other reviews that overlapped 2017 & 2018 the Department had previously considered all countries on the 2017 and 2018 GNI lists as equally economically comparable.

22. Risen also made arguments concerning the HTS classification of its backsheet, junction box, and EVA film inputs in its case brief.

23. Petitioner filed a case brief arguing, among other issues, that the Department should recalculate the surrogate financial ratios. Risen timely filed a rebuttal brief arguing that Petitioner's suggested calculation was contrary to past practice and results in an inaccurate margin by overstating overhead. Critically, petitioner's calculation suggested the Department assign a remainder of cost of goods sold to overhead expenses (the numerator in the ratio) rather than to materials, labor, and energy expenses. Risen argued this was incorrect because the remaining cost of goods sold figure must contain primarily labor and energy expenses (in the denominator of the ratio) not found elsewhere.

24. In the Final Results, the Department continued to rely upon Malaysia and the Malaysian contemporaneous import value for silver paste. However, the Department determined that the Bulgarian and Romanian surrogate value for solar glass was the best available information to value tempered and coated glass. Still maintaining that Bulgaria was not an appropriate surrogate country, the Department relied upon the Romanian import value for solar glass.

25. The Department also recalculated the financial ratios as petitioner suggested, increasing the overhead ratio from 6.29% to 21.70%. The Department also corrected a small

error with regard to Risen's MEP purchases, which Risen does not contest. The Department made no other changes with respect to Risen.

26. In its preliminary and final results, the Department applied adverse facts available ("AFA") to a portion of Risen's factors of production ("FOPs") for solar cells and modules that were supplied by producers unaffiliated to Risen. These unaffiliated producers refused to provide Risen or the Department with their own FOPs for the manufacture of solar cells and modules that they provided to Risen. The Department found in its final results that the unaffiliated suppliers were uncooperative interested parties to the administrative review and that the missing FOP data was significant.

27. During the review, Risen contacted all of its unaffiliated suppliers on at least two different occasions requesting that the companies provide their FOP data, explaining what data was required and how the Department would use the data. Risen also explained that it would be unable to purchase any products from uncooperative companies in the future and would purchase only from cooperating suppliers. Nevertheless, certain of Risen's large number of unaffiliated cell and module suppliers refused to cooperate in the administrative review.

28. Despite Risen's concerted efforts to obtain the missing data and Risen's own full cooperation throughout the review, the Department found that Risen also failed to act to the best of its ability to compel all the unaffiliated suppliers to cooperate in the review. The Department therefore applied AFA to calculate consumption values for the missing FOP data by using Risen's highest consumption figures for the same inputs.

29. Risen filed timely alleged ministerial error comments regarding the Final Results. Risen demonstrated that the Department relied upon the incorrect value for the Romanian glass import value in light of the HTS the Department intended to rely upon. Risen also corrected the

Department's statement that HTS 8544.42.9400 was not on the record, where in fact the HTS was on the record and therefore the Department could rely upon this HTS along with HTS 8544.60.1100 to value Risen's junction box. Lastly, Risen alleged that the Department's revised financial ratios resulted in an inadvertent double-counting the labor and energy expenses as there were no longer any labor or energy costs in the "materials-labor-energy" denominator for the three surrogate financial ratios. The Department's calculation contained no labor or energy expenses in the MLE denominator, rather these expenses were allocated to the overhead numerator. Therefore, according to the Department's consistent practice and understanding, the labor and energy expenses were double-counted and the Department must exclude the cost of labor and energy in the normal value to avoid double counting costs. As of the filing of this complaint, the Department has not ruled with respect to these ministerial error allegations.

30. In light of changes for the Final Results, Risen was assigned a final margin of **106.39 percent**. This margin is dramatically higher than any margin previously assigned to Risen or previously calculated in the history of this order for any mandatory respondent. The margin is almost entirely driven by the high Malaysian import value for silver paste but also adversely affected by the Department's re-assignment of two key costs comprising its standard denominator for surrogate financial ratios to the numerator for such ratios.

31. This appeal ensued.

## COUNT I

32. Plaintiff incorporates herein by reference paragraphs 1 through 31 above.

33. The Department did not select the "best available information" for the silver paste surrogate value, contrary to 19 U.S.C. §1677b(c)(1). The Department ignored past practice and Court precedent, both by its position on the importance and relevance of certain benchmark

10

information and also by its building of the record itself for this input. As such, the Department's silver paste surrogate value choice was unlawful and unsupported by substantial evidence. 19 U.S.C. §1516a(b)(1)(B)(i) (the Court shall hold unlawful Department decisions that are unsupported by substantial evidence).

## COUNT II

34. Plaintiff incorporates herein by reference paragraphs 1 through 33 above.

35. The Department's determination to supplement the record with corroborating silver paste information yet its refusal to place other surrogate value information on the record that it deemed was missing is arbitrary and also contrary to its position that the parties are responsible for building an adequate record. *See* 19 U.S.C. §1516a(b)(1)(B)(ii) (the Court shall hold unlawful Department decisions that are arbitrary, capricious, or otherwise not in accordance with law); *Transactive Corp. v. United States*, 91 F.3rd 232, 237 (D.C. Cir. 1996) (characterizing as arbitrary and capricious the agency's disparate treatment of similar situations); NSK Ltd. v. United States, 346 F. Supp. 2d 1312, 1333 (Ct. Int'l Trade 2004) ("Ultimately, respondents have the responsibility of creating an adequate record.").

## COUNT III

36. Plaintiff incorporates herein by reference paragraphs 1 through 35 above.

37. The Department's calculation of the financial ratios is contrary to substantial evidence. *See* 19 U.S.C. §1677b(c)(1) (requiring the Department to rely upon the "best available information" for the surrogate values); 19 U.S.C. §1516a(b)(1)(B)(i) (the Court shall hold unlawful Department decisions that are unsupported by substantial evidence). Not only were the re-allocations of costs from the denominator of the financial ratios to the numerator, unreasonable, the calculation also resulted in double-counting labor and energy expenses.

11

## COUNT IV

38. Plaintiff incorporates herein by reference paragraphs 1 through 37 above.

39. The Department did not rely upon the best available information to value Risen's backsheet and EVA film and therefore such decisions are unsupported by substantial evidence. *See* 19 U.S.C. §1677b(c)(1) (requiring the Department to rely upon the "best available information" for the surrogate values); 19 U.S.C. §1516a(b)(1)(B)(i) (the Court shall hold unlawful Department decisions that are unsupported by substantial evidence).

## COUNT V

40. Plaintiff incorporates herein by reference paragraphs 1 through 39 above.

41. The record as a whole did not support the selection of Malaysia as the primary surrogate over Bulgaria because Bulgaria offered the best available information for the factors of production. *See* 19 U.S.C. §1677b(c)(1) (requiring the Department to rely upon the "best available information" for the surrogate values). As such, the Department's determination to rely upon Malaysia was unsupported by substantial evidence. *See* 19 U.S.C. §1677b(c)(1) (requiring the Department to rely upon the "best available information" for the surrogate values); 19 U.S.C. §1516a(b)(1)(B)(i) (the Court shall hold unlawful Department decisions that are unsupported by substantial evidence).

## COUNT VI

42. Plaintiff incorporates herein by reference paragraphs 1 through 41 above.

43. The Department's determination that Bulgaria is not at the same level of economic development is arbitrary and capricious. *See* 19 U.S.C. §1516a(b)(1)(B)(ii) (the Court shall hold unlawful Department decisions that are arbitrary, capricious, or otherwise not in accordance with law). Said Determination was also contrary to substantial record evidence of

Bulgaria's economic comparability. *See* 19 U.S.C. §1516a(b)(1)(B)(i) (the Court shall hold unlawful Department decisions that are unsupported by substantial evidence).

## COUNT VII

44. Plaintiff incorporates herein by reference paragraphs 1 through 43 above.

45. The Department relied upon the incorrect value for the Romanian glass import surrogate value and incorrectly found that the record lacked HTS 8544.42.9400 to value Risen's junction boxes. Accordingly, the Department's surrogate values for these two inputs is not supported by substantial record. *See* 19 U.S.C. §1516a(b)(1)(B)(i) (the Court shall hold unlawful Department decisions that are unsupported by substantial evidence). Risen alleged these two errors as ministerial errors. As of the time of filing of this complaint, the Department has not yet accepted or denied these corrections. Risen will amend its complaint to remove this count, in whole or in part, if the Department accepts these corrections and amends the Final Results accordingly.

## COUNT VIII

46. Plaintiff incorporates herein by reference paragraphs 1 through 45 above.

47. The Department's application of AFA with respect to certain unreported FOPs of the cell and module suppliers is unsupported by substantial evidence and is not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i) (the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . .."). Risen used its maximum efforts to persuade and induce its suppliers to cooperate. Risen sent out at least two rounds of unsuccessful requests, in which Risen threatened to cease conducting business with uncooperative companies, and was nevertheless unable to coerce the cooperation of its unaffiliated suppliers. Its efforts were

effective with respect to certain other suppliers. The Department's findings that Risen had the power to induce all its suppliers to cooperate are unsupported by substantial evidence. The Department's finding that it can legally penalize Risen for the non-cooperation of unaffiliated suppliers is also contrary to law, as developed in the jurisprudence of this Court and related appellate court decisions.

*   *   *

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against the defendant:

(1) Declaring that the Department's silver paste surrogate value was unsupported by substantial evidence and contrary to practice; and

(2) Declaring that the Department's placement of information on the record with respect to silver paste was arbitrary and capricious; and

(3) Declaring the Department's financial ratio calculation as well as the resulting double-counting of labor and energy expenses is unsupported by substantial evidence, contrary to practice, and contrary to law; and

(4) Declaring the Department's backsheet and EVA film surrogate value was unsupported by substantial evidence; and

(5) Declaring the Department's selection of Malaysia as the primary surrogate country unsupported by substantial evidence; and

(6) Declaring the Department's determination that Bulgaria was not at the same level of economic development as China was arbitrary and capricious; and

(7) Declaring the Department's failure to correct certain ministerial errors regarding glass

and junction box is unsupported by substantial evidence; and

(8) Declaring the Department's AFA application with respect to unreported FOP data was unsupported by substantial evidence and not in accordance with the law; and

(9) Providing any additional relief as may be just in the circumstances.

          Respectfully submitted,

          /s/ Gregory S. Menegaz
          Gregory S. Menegaz
          Alexandra H. Salzman
          J. Kevin Horgan
          **deKieffer & Horgan, PLLC**
          1090 Vermont Ave., N.W. 20005, Suite 410
          Tel: (202) 783-6900
          email: gmenegaz@dhlaw.com

Dated: October 28, 2020