A-570-979
Remand
Slip Op. 22-33
POR:  12/01/2017 – 11/30/2018
**Public Version**
E&C/OIV:  JDP

***Risen Energy Co., Ltd., Trina Solar Co., Ltd., et al., and Shanghai BYD Co., Ltd., et al. v.
United States and Sunpower Manufacturing Oregon, LLC***
**Consol. Court No. 20-03743, Slip Op. 22-33 (CIT April 4, 2022)**
**Crystalline Silicon Photovoltaic Cells, Whether Or Not Assembled Into Modules, from the
People's Republic of China**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

## I.  SUMMARY

Pursuant to the U.S. Court of International Trade's (Court) remand order,[1] we have

prepared these final results of redetermination concerning the final results in the sixth

administrative review of the antidumping duty (AD) order on crystalline silicon photovoltaic

cells, whether or not assembled into modules (solar cells), from the People's Republic of China

(China).[2]  In its ruling, the Court remanded, in part, the *AR6 Final Results* to the Department of

Commerce (Commerce):  (1) to reconsider, or further explain, the application of partial adverse

facts available (AFA) to calculate Trina Solar Co., Ltd.'s (Trina)[3] and Risen Energy Co., Ltd.'s

---

[1] *See Risen Energy Co., Ltd., Trina Solar Co., Ltd., et al., and Shanghai BYD Co., Ltd., et al. v. United States and
Sunpower Manufacturing Oregon, LLC,* Consol. Court No. 20-03743, Slip Op. 22-33 (Ct. Int'l Trade April 4, 2022)
(*Risen Energy Remand Order*).
[2] *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of
China:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017–
2018,* 85 FR 62275 (October 2, 2020) (*AR6 Final Results*), and accompanying Issues and Decision Memorandum
(IDM); *see also Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's
Republic of China:  Notice of Correction to the Final Results of the 2017-2018 Antidumping Duty Administrative
Review,* 85 FR 79165 (December 9, 2020).
[3] Commerce treated the following six companies as a single entity:  Trina Solar Co., Ltd.; Trina Solar (Changzhou)
Science & Technology Co., Ltd.; Yancheng Trina Guoneng Photovoltaic Technology Co., Ltd.;
Turpan Trina Solar Energy Co., Ltd.; Hubei Trina Solar Energy Co., Ltd.; Trina Solar (Hefei) Science &
Technology Co., Ltd.; and Changzhou Trina Hezhong Photoelectric Co., Ltd. (collectively, Trina).  *See AR6 Final
Results,* 85 FR at 62276.

(Risen)[4] dumping margins; (2) to reconsider, or further explain, using Malaysian import data to value the silver paste that was used by Risen and Trina (*i.e.*, Malaysian HTS 7115.90.1000) and the backsheets and EVA that were used by Risen (*i.e.*, Malaysian HTS 3920.62.1000 and HTS 3920.10.1900, respectively); and (3) to reconsider the separate rate calculation.[5]  In accordance with the Court's remand order, in this redetermination, we valued silver paste using Malaysian import data for HTS 7106.92.00 rather than HTS 7115.90.1000, and, under respectful protest,[6] we did not apply an adverse inference in selecting from among the facts otherwise available in calculating Trina's and Risen's dumping margins.  Additionally, we continued to value Risen's backsheets and EVA using Malaysian import data under HTS 3920.62.1000 and HTS 3920.10.1900, respectively.  Lastly, in accordance with these determinations, we have recalculated the dumping margins of the mandatory respondents and revised weighted-average dumping margin for separate rate respondents consistent with the Court's remand order.

On April 4, 2022, the Court issued its opinion and order in which it remanded to Commerce, in part, the final results of the 2017-2018 antidumping duty administrative review of solar cells from China.[7]  On April 21, 2022, pursuant to 19 CFR 351.301(c)(4), Commerce placed factual information on the record and provided interested parties one opportunity to comment on and/or submit factual information to rebut, clarify, or correct the factual information.[8]  Specifically, Commerce placed on the record Global Trade Atlas (GTA) import

---

[4] Commerce treated the following six companies as a single entity:  Risen (Wuhai) New Energy Co., Ltd.; Zhejiang Twinsel Electronic Technology Co., Ltd.; Risen (Luoyang) New Energy Co., Ltd.; Jiujiang Shengchao Xinye Technology Co., Ltd.; Jiujiang Shengzhao Xinye Trade Co., Ltd. Ruichang Branch; Risen Energy (Hong Kong) Co., Ltd.; and Risen Energy Co., Ltd. (collectively, Risen).  *See AR6 Final Results*, 85 FR at 62276.
[5] *See Risen Energy Remand Order* at 37, 21-28, 28 and 42.
[6] *See Viraj Group Ltd. v. United States*, 343 F.3d 1371, 1376-77 (Fed. Cir. 2003).  While Commerce respectfully disagrees with the Court, it complies with the Court's remand order under respectful protest.
[7] *See Risen Energy Remand Order* at 5.
[8] *See* Memorandum, "Reopening the Record and Opportunity to Submit Comment and Factual Information," dated April 21, 2022; *see also* Memorandum, "Reopening the Record and Opportunity to Submit Comment and Factual

data for Malaysia for Harmonized Tariff Schedule (HTS) number 710692 and ASTM Abstracts from ASTM D4801 and ASTM D6988 which relate to backsheets and EVA.[9]  On May 2, 2022, Trina, Risen, and Shanghai BYD Co., Ltd., and Canadian Solar Inc., Canadian Solar International Limited, Canadian Solar Manufacturing (Changshu), Inc., Canadian Solar Manufacturing (Luoyang), Inc., CSI Cells Co., Ltd., and Canadian Solar (USA) Inc. (collectively, BYD and Canadian Solar) commented and/or submitted factual information on the information which Commerce placed on the record.[10]

On June 10, 2022, Commerce released its draft redetermination to interested parties and provided them with an opportunity to comment on the *Draft Remand*.[11]  On June 17, 2022, Shanghai BYD Co. Ltd. (BYD) and Canadian Solar Inc., Canadian Solar International Limited, Canadian Solar Manufacturing (Changshu), Inc., Canadian Solar Manufacturing (Luoyang), Inc., CSI Cells Co., Ltd., and Canadian Solar (USA) Inc. (collectively Canadian Solar),[12] Risen,[13] and Trina[14] submitted comments on the *Draft Remand*.  We have addressed interested parties' comments in detail below.

## II.    REMANDED ISSUES

### A.    Application of AFA Due to Unreported Factors of Production (FOP) Data

In the underlying review, Commerce applied partial AFA in determining consumption

---

Information-Inclusion of Missing Attachment," dated April 22, 2022 (correcting the inadvertent omission of attachment II, containing ASTM Abstracts, in Commerce's April 21, 2022 memorandum) (Commerce April 22, 2022 Memorandum).

[9] *Id.*

[10] *See* Trina's Letter, "Comments on Factual Information Submitted by Commerce," dated May 2, 2022 (Trina's May 2, 2022 Submission); *see also* Risen's Letter, "Rebuttal New Factual Information Commerce Placed on Record," dated May 2, 2022 (Risen's May 2, 2022 Response); and BYD and Canadian Solar's Letter, "Comments on NFI from Commerce," dated May 2, 2022 (BYD's May 2, 2022 Response).

[11] *See* Memorandum, "Draft Results of Remand Redetermination Pursuant to Court Order," dated June 10, 2022 (*Draft Remand*).

[12] *See* BYD and Canadian Solar's Letter, "Canadian Solar and BYD's Comments on Draft Results of Redetermination," dated June 17, 2022 (Canadian Solar and BYD's Comments on Draft Remand).

[13] *See* Risen's Letter, "Comments on Draft Remand," dated June 17, 2022 (Risen's Comments on Draft Remand).

[14] *See* Trina's Letter, "Comments on Draft Results," dated June 17, 2022 (Trina's Comments on Draft Remand).

quantities for unreported FOPs because certain of Risen and Trina's unaffiliated producers who supplied them with solar cells and modules failed to cooperate by not providing any of their FOP information.[15]  As a result of the lack of FOP information from those unaffiliated producers, to calculate Risen and Trina's dumping margins, as partial AFA, for each company we used the highest per-unit consumption reported by the company for each input in place of the missing FOP information.[16]

In the *Risen Energy Remand Order*, the Court held that Commerce's application of partial AFA in calculating Risen's and Trina's weighted-average dumping margins was unlawful and unsupported by substantial evidence because Commerce failed:  (1) to demonstrate that Risen and Trina did not cooperate to the best of their ability in light of record evidence that both companies attempted to obtain FOP data from their unaffiliated producers;[17] (2) to demonstrate that Trina and Risen failed to cooperate by continuing to do business with the non-cooperative unaffiliated producers;[18] (3) to demonstrate that Risen and Trina had sufficient leverage to induce cooperation from the unaffiliated producers given that the record shows that Trina and Risen threatened to withhold business from the unaffiliated producers but still did not induce their cooperation;[19] (4) to show a possibility of duty evasion by the non-cooperative unaffiliated producers in light of the fact that none of the uncooperative unaffiliated producers are mandatory respondents or named Chinese exporters of subject merchandise, and therefore, there is no rate for them to evade;[20] and (5) to explain why the use of the highest FOP consumption rates results

---

[15] *See AR6 Final Results* IDM at Comment 1.
[16] *Id.*
[17] *See Risen Energy Remand Order* at 37-40.
[18] *Id.* at 39 (holding unsupported by record evidence that Risen's and Trina's current uncooperative, unaffiliated producers were the same as those used in previous reviews and that Commerce could have issued a supplemental questionnaire to obtain this information).
[19] *Id.* at 40.
[20] *Id.* at 41.

in a more accurate dumping margin.[21]  The Court remanded to Commerce, for further explanation or reconsideration, its application of partial AFA in calculating Risen and Trina's dumping margins.[22]

**Analysis**

In light of the Court's remand order, we have reexamined our determination and, under respectful protest, we have determined not to apply an adverse inference in selecting from among the facts otherwise available to use in the place of the missing FOP consumption rates to calculate Risen and Trina's dumping margins.  Rather, as partial neutral facts available, for both Risen and Trina, we have determined to use the average consumption rates reported by the company for each input, as a substitute for the missing FOP information to use in calculating the company's dumping margin.

Section 776(a) of the Tariff Act of 1930, as amended (the Act), directs Commerce to use facts available if necessary information is not available on the record or an interested party (or any other person) withholds information that has been requested, fails to provide such information by the deadline for its submission, significantly impedes a proceeding, or provides such information but the information cannot be verified.  It is undisputed that certain of Risen and Trina's suppliers, who are themselves interested party producers of solar cells and modules, failed to provide any FOP information.[23]  As a result, this FOP information was missing from the record.  Thus, we continue to find that the use of facts available is warranted pursuant to sections 776(a)(1), and 776(a)(2)(A)-(B) of the Act.[24]

---

[21] *Id.*
[22] *Id.* at 37-42.
[23] *See AR6 Final Results* IDM at Comment 1.
[24] *Id.*

5

Although the Court held that Commerce failed to demonstrate that Risen and Trina did not cooperate to the best of their ability, in accordance with section 776(b) of the Act, we respectfully disagree and continue to find that Risen and Trina, both experienced respondents that are aware of the importance of FOP information to the accuracy of Commerce's dumping calculation, did not cooperate to the best of their ability because the record contains no indication that either company attempted to secure its ability to report necessary FOP data by ensuring cooperation of unaffiliated suppliers before agreeing to do business with them.

Additionally, even if the uncooperative producers do not have their own dumping duty rates, the potential for duty evasion is present if uncooperative producers with consumption rates higher than those of Risen or Trina withhold such information and Commerce then uses the average of reported consumption rates as a substitute for the missing information. Lower consumption rates result in a lower normal value and a lower dumping margin. Therefore, withholding consumption rates offers an evasion mechanism when the producers' actual consumption rates are higher than the reported consumption rates.

Lastly, use of AFA encourages respondents to put forth their maximum effort to provide Commerce with necessary information and deters non-cooperation to the extent that it induces Risen and Trina to attempt to ensure cooperation from producers before agreeing to do business with them.

However, in the *Risen Energy Remand Order*, the Court held that substantial evidence did not support our conclusions as to whether Risen and Trina cooperated to the best of their ability, whether Risen and Trina possessed sufficient leverage over uncooperative unaffiliated producers, whether there was potential for duty evasion, and how the application of partial AFA

results in an accurate margin.[25]  Therefore, we have reconsidered our findings, and under

respectful protest we have determined for this redetermination to revise our calculation of Risen

and Trina's weighted-average dumping margins by applying partial neutral facts available,

instead of partial AFA.  Specifically, for both Risen and Trina, we have determined to use the

average consumption rates reported by the company for each input as a substitute for the missing

FOP consumption rates to calculate each respondent's dumping margin.

**Interested Parties' Comments:**

*BYD, Canadian Solar, Risen, and Trina:*[26]

- Commerce correctly based Risen and Trina's dumping margins, in part, on neutral facts
  available, rather than AFA, in its *Draft Remand*.

**Commerce's Position:**

Consistent with the *Draft Remand* and for the reasons explained above, in our normal

value calculations in these final remand results, under respectful protest, for both Risen and Trina

we used the average consumption rate reported by the company for each FOP as a substitute for

the missing FOP data.

**B.    Silver Paste**

The Court held that Commerce failed to sufficiently justify its conclusion that the

Malaysian average unit import value (AUV) is a reliable surrogate to value silver paste in light of

detracting record evidence that the value (8,645.31 US/kg) is aberrant and not reflective of the

commercial reality of solar cell and module production.[27]  First, the Court rejected Commerce's

reliance on the Russian AUV and historical Malaysian import data for silver paste to support its

---

[25] *See Risen Energy Remand Order* at 37.
[26] *See* Canadian Solar and BYD's Comments on Draft Remand at 3; *see also* Risen's Comments on Draft Remand at 2; and Trina's Comments on Draft Remand at 2.
[27] *Id.* at 22 and 25.

selection of the Malaysian AUV.[28]  Although Commerce relied on the AUV from another

potential surrogate country, Russia (5,968.82 US/kg), to show that the Malaysian AUV (8,645.31

US/kg) is not aberrant, the Court held that Commerce cannot rely on the Russian AUV in this

way because the Russian AUV itself is "a small-quantity, large per-unit seemingly aberrational

value."[29]  The Court also held that Commerce cannot rely on the historical Malaysian import data

to support its determination because Commerce placed the data on the record, but failed to

provide parties with an opportunity to submit factual information in response to that data.[30]

Next, the Court determined that although Commerce explained why it declined to value

silver paste using each of the benchmarks on the record, it failed to explain why, collectively, the

benchmarks do not indicate the unreliability of the Malaysian import value for silver paste.[31]

Further, the Court rejected Commerce's rationale for declining to rely on combined metallization

cost benchmark data from a report by the National Renewable Energy Laboratory (NREL),

which overestimates the value of silver paste but still reflects a value which is multiples lower

than the value relied on by Commerce.[32]

Finally, the Court concluded that Commerce failed to address Risen's argument that

Malaysian HTS 7115.90.10.00, covering other articles or catalysts of gold or silver, is improper

because it is not specific to silver paste.[33]

---

[28] *Id*. at 22-25.
[29] *Id*. at 23 (holding that the Russian import data for HTS 711590 is "seemingly aberrational" because it accounts for the smallest quantity of import data on the record, at 0.3 percent, but its per-unit value of $5,968.82/kg is substantially higher than any other potential surrogate country, other than Malaysia).
[30] *Id.* at 23-24 (holding that Commerce placed the historical Malaysian import data on the record after the record closed and did not reopen the record, so parties were denied the opportunity to submit factual information to rebut, clarify or correct such information); *see also* 19 CFR 351.301(c)(4).
[31] *Id*. at 26.
[32] *Id*. at 26-27.
[33] *Id.* at 27-28.

**Analysis**

In their comments on the factual information placed on the record of this remand by Commerce:  (1) Trina advocated for, and provided factual information in support of, valuing silver paste using Malaysian import data under HTS 7106.92;[34] (2) BYD and Canadian Solar agreed with Trina;[35] and (3) Risen provided extensive factual information regarding, but did not comment on, silver paste.[36]

We have determined to value silver paste using the AUV of Malaysian import data under HTS 7106.92, rather than HTS 7115.90.10, because the subheading is more specific to the silver paste used by Risen and Trina and the AUV of imports under that subheading is consistent with benchmark data on the record.

Regarding specificity, the Malaysian HTS 7106.92 covers imports of silver, unwrought or in semi manufactured forms, or in powder form[37] while HTS 7115.90.10. covers "Articles Nesoi, Of Precious Metal Or Of Metal Clad With Precious Metal – Other Catalysts in the Form of Wire Cloth or Grill of Platinum of Gold or Silver."[38]  We find that Malaysian HTS 7106.92 is more specific to silver paste than Malaysian HTS 7115.90.10 because it covers forms of silver, while HTS 7115.90.10 covers other precious metals in addition to silver, such as gold and platinum.[39] Additionally, Trina placed information on the record of this remand showing that Malaysian

---

[34] *See* Trina's May 2, 2022 Submission at Exhibits 1 and 2.

[35] *See* BYD's May 2, 2022 Response at 2.

[36] *See* Risen's May 2, 2022 Response.

[37] *See* Trina's May 2, 2022 Submission at Exhibit 2 page 39.

[38] *See* Memorandum, "2017-2018 Antidumping Duty Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China:  Factor Valuation Memorandum," dated January 31, 2020, at Attachment I; *see also* Trina's May 2, 2022 Submission at Exhibit 2 page 32.

[39] *See* Memorandum, "2017-2018 Administrative Review of the Antidumping Duty Order on Crystalline Silicon Photovoltaic Cells, Whether or not Assembled into Modules, from the People's Republic of China:  Documents Concerning the Classification of Certain Inputs," dated November 1, 2019, at Attachment III page 3.

customs officials classify the type of silver paste used in solar cell production under HTS 7106.92 rather than HTS 7115.90.10.[40]

Moreover, benchmark data on the record indicate that the AUV of imports under the Malaysian HTS 7106.92 is reliable, supporting its selection to value silver paste over Malaysia HTS 7115.90.10. The AUV for period of review (POR) imports into Malaysia under HTS 7106.92 is 582.75 USD/kg.[41] As stated above, the AUV of POR imports into Malaysia under HTS 7115.90.10 is 8,645.31 USD/kg. Risen placed a market research report on the record of the remand proceeding entitled "Silver Paste Market Global Industry Analysis, Size, Share, Growth, Trends and Forecast 2020-2027" from Up Market Research.[42] This report contains the prices of silver paste during 2018 in a number of the countries that Commerce identified as potential surrogate countries in the underlying review.[43] The prices in the report range from 599.60 USD/kg to 644.60 USD/kg for Brazil, from 614.90 USD/kg to 637.50 USD/kg for Malaysia, from 563.70 USD/kg to 584.30 USD/kg for Mexico, and from 563.70 USD/kg to 911.90 USD/kg for Russia.[44] The POR AUV of imports into Malaysia under HTS 7106.92, 582.75 USD/kg., is consistent with the prices of silver paste in the market research report. Moreover, although Commerce's practice is not to use a respondent's market economy purchase prices as benchmarks for potential surrogate values, the POR AUV of imports into Malaysia under HTS 7106.92 is consistent with Trina's purchase price for silver paste ([      ] USD/kg.),[45] which the Court included among the benchmarks that Commerce should consider collectively with respect

---

[40] See Trina's May 2, 2022 Submission at Exhibit 2.
[41] See Commerce April 22, 2022 Memorandum at Attachment I.
[42] See Risen's May 2, 2022 Response at Exhibit 4X.
[43] Id.
[44] Id.
[45] See Trina's Letter, "Section D Response by Trina's Unaffiliated Cell and Module Supplier," dated November 25, 2019, at Exhibit D-6.

to the reliability of its valuation of silver paste.[46]  Additionally, the Court noted that the National Renewable Energy Laboratory (NREL) Report benchmark data indicates that the cost of screen-printing solar cells with silver and aluminum paste ("metallization") was approximately 0.015 USD/watt with 77 percent of the cost accounted for by silver paste.[47]  Using the POR AUV of imports into Malaysia under HTS 7106.92, 582.75 USD/kg., to value silver paste results in a silver paste cost of approximately [    ] USD/watt.[48]  This is consistent with the silver paste metallization cost in the NREL Report.  Hence, collectively, the benchmark prices support use of the AUV of imports under Malaysian HTS 7106.92 (582.75 USD/kg) instead of the AUV of imports under Malaysian HTS 7115.90.10 (8,645.31 USD/kg).[49]

Because the manufactured silver imports under Malaysian HTS 7106.92 are more specific to silver paste than the articles imported under Malaysian HTS 7115.90.10, and the AUV of POR imports under Malaysian HTS 7106.92 are more consistent with benchmark data on the record than the AUV of POR imports under Malaysian HTS 7115.90.10, in this redetermination, we have determined to value silver paste using Malaysian import data for HTS 7106.92.

**Interested Parties' Comments:**

*BYD, Canadian Solar, Risen, and Trina*:[50]

- Commerce correctly valued silver paste using Malaysian import data for HTS 7106.92.

---

[46] *See Risen Energy Remand Order* at 25-26.
[47] *Id*. at 26-27 and 27 n.24; *see also* Trina's Letter, "Rebuttal to Petitioner's Comments on Selection of Surrogate Values," dated September 26, 2019 (NREL report), at Exhibit 2 page 26.
[48] *See* Risen's Letter, "Risen's Third Supplemental Response," dated November 27, 2019, at Exhibit SQ3-3 (identifying the per-watt consumption in kg. in fields C_SPASTE and C_SPASTE2).
[49] The record also contains GTA import data for HTS 7115.90.10 from potential surrogate countries selected for this review, but these data are not relevant for purposes of benchmarking the reliability of HTS 7106.92, a distinct HTS category.  Therefore, we did not use GTA import data for HTS 7115.90.10 from potential surrogate countries as a benchmark for HTS 7106.92.
[50] *See* Canadian Solar and BYD's Comments on Draft Remand at 4; *see also* Risen's Comments on Draft Remand at 2; and Trina's Comments on Draft Remand at 2.

**Commerce's Position:**

Consistent with the *Draft Remand* and for the reasons explained above, in our normal value calculations in these final remand results, we valued silver paste using Malaysian import data for HTS 7106.92.

**C.    Backsheets**

The Court held that Commerce's backsheets valuation using Malaysia HTS 3920.62.1000, covering plates and sheets of poly(ethylene terephthalate) (PET), is unsupported by substantial evidence and arbitrary.[51]  Specifically, the Court held that Commerce failed to address record evidence or explain why its valuation is reasonable in light of detracting evidence that backsheets are thin and flexible, and therefore, meet Commerce's definition of film.[52]  The Court further held that Commerce's determination was arbitrary because it lacked explanation for Commerce's deviation from historical treatment of backsheets under HTS classifications comparable to Malaysia HTS 3920.62.9000, covering other than plates and sheets of PET, when the record indicates that Risen's backsheets are the same as those used by respondents in past reviews.[53]  The Court also concluded that Commerce did not explain how the record as a whole supports its determination that backsheets are sheets.  As a result, the Court ordered that Commerce address detracting record evidence that backsheets meet Commerce's definition of film should it continue to value Risen's backsheets using Malaysia HTS 3920.62.1000.

**Analysis**

The record contains Malaysian import data for HTS 3920.62.1000 and HTS 3920.62.9000, both covering PET, with HTS 3920.62.1000 covering plates and sheets, and HTS

---

[51] *See Risen Energy Remand Order* at 28 and 29-30.
[52] *Id*. at 29 (noting Commerce's description of film as a "lighter, less rigid product than plates and sheets").
[53] *See Risen Energy Remand Order* at 30.

3920.62.9000 covering other, or non-plates and sheets.[54]  Thus, the central issue is whether to value backsheets using the Malaysian HTS category covering PET plates and sheets or the category covering non-plates and sheets (*e.g.*, film).

Because there was nothing on the record of the underlying review that defined the terms plate, sheet, or film, we placed ASTM Abstracts on the remand record that define sheet and film.[55]  These ASTM Abstracts demonstrate that the thickness of Risen's backsheets is consistent with sheet, rather than film.[56]  Specifically, the ASTM Abstracts state that "{f}ilm is defined in Terminology <u>D883</u> {(terminology relating to plastics)} as an optional term for sheeting having a nominal thickness no greater than 0.25 mm (0.010 in.)."[57]  The ASTM Abstracts also indicate that ASTM D4801 – 08(2016) contains specifications for polyethylene sheeting in thickness of 0.25 mm (0.010 in.) and greater.[58]  This indicates that polyethylene plastic materials that are 0.25 mm and thicker are considered sheets.  Risen provided specifications for the models of backsheets that it commonly used during the POR identifying [

],[59] [

].[60]  Thus, Risen's backsheets do not meet the

---

[54] *See* Risen's Letter, "Crystalline Silicon Photovoltaic Cells from the People's Republic of China - Risen Final Surrogate Value Submission - PART I," dated January 2, 2020 (Risen's January 2, 2020 submission - Part I), at Exhibit SV2-4.
[55] *See* Commerce April 22, 2022 Memorandum at Attachment II.
[56] *See* Risen's Letter, "Crystalline Silicon Photovoltaic Cells from the People's Republic of China – Risen Supplemental Section D Questionnaire Response," dated October 17, 2019 (Risen's October 17, 2019 Submission), at Exhibit S2-1; *see also* Commerce April 22, 2022 Memorandum at Attachment II.
[57] *See* Commerce April 22, 2022 Memorandum at Attachment II.
[58] *Id.* (indicating that ASTM D4801 – 08(2016) "covers requirements for extruded (cast or blown) and compression-molded sheeting made from low-, medium- and high-density polyethylenes and copolymers in thickness of 0.25 mm (0.010 in.) and greater.").
[59] *See* Risen's Letter, "Crystalline Silicon Photovoltaic Cells from the People's Republic of China – Risen Section D Questionnaire Response & Appendices V & XII," dated July 2, 2019 (Risen's Section D Response), at 40 and Exhibit D-38.
[60] *See* Commerce April 22, 2022 Memorandum at Attachment II.

ASTM's [            ] specification for film.  Instead, Risen's backsheets are consistent with the ASTM's [            ] specification for sheet.

In placing the ASTM Abstracts on the record, Commerce opened the record for parties to submit new factual information to rebut, clarify, or correct the factual information that Commerce placed on the record by way of the Commerce April 22, 2022 Memorandum.[61]  No party submitted evidence to rebut the ASTM Abstracts on sheet and film thicknesses nor did any party submit evidence in this remand, or in the underlying administrative review, regarding the meaning of plates, sheets, and film used in the Malaysia HTS.  Risen submitted marketing materials that indicate backsheets are made of various layers of films (backsheet films).[62]  There is no evidence that the terms in the marketing materials submitted by Risen correspond to the terms "sheet" and "film" used in the Malaysian HTS or in other generally recognized authoritative sources such as an industry or trade association, a professional organization, or a standards organization.

Lastly, using an HTS category that covers plates and sheets (*i.e.*, Malaysian imports under HTS 3920.62.1000 (Of Poly(Ethylene Terephthalate):  Plates And Sheets)) to value backsheets is not inconsistent with our prior approach to valuing this input, as claimed by Risen.[63]  In the previous administrative review in this proceeding, we valued backsheets using an HTS category that covered various forms of plastic, including plates and sheets (*i.e.*, Thai imports under HTS 3920.62.00090 (*i.e.*, Other plates, sheets, film, foil, and strip, of plastics, non-cellular and not reinforced, laminated, supported, or similarly combined with other; Of

---

[61] *Id.* at Attachment II (placing on the record Abstracts from ASTM D4801 and ASTM D6988).
[62] *See* Risen's May 2, 2022 Response at Exhibit 8.
[63] *See Risen Energy Remand Order* at 30 (citing Risen's January 2, 2020 submission - Part I at Exhibit SV2-7); *see also* Risen's Case Brief at 17-18.

poly(ethylene terephthalate)).[64]  Hence, this is not the first time that we used imports of plates and sheets of plastic to value backsheets.  Therefore, there is no inconsistency between our selection of a surrogate value for backsheets in this review and our selection of a surrogate value for backsheets in the previous review.  Therefore, we have continued to value Risen's backsheets using the AUV of Malaysian imports under HTS 3920.62.1000.

**Interested Parties' Comments:**

*Risen:*[65]

- Commerce's determination to value backsheet using Malaysian HTS 3920.62.1000 consistent with the Final Results remains unsupported by substantial evidence.

- The two ASTM abstracts that Commerce placed on the record of this remand to distinguish film from sheet, based on thickness, are not meant for that purpose.  Rather, one ASTM abstract provides guidelines for determining the thickness of plastic film and merely contains a reference that film is an optional term for sheeting with a thickness less than 0.25mm.  The second ASTM abstract contains a reference to the standard specification for extruded and compression-molded sheeting equal to or greater than 0.25mm thick that is made from low-, medium-, and high-density polyethylenes and copolymers.  This ASTM abstract does not indicate that all polyethylene sheets are greater than 0.25mm thick, does not apply to the film product used by Risen or used in the solar industry, does not discuss the terms "film" or "sheet," and does not provide any information regarding how the terms "film" and "sheet" are used in the solar industry or defined in the Malaysian HTS.

---

[64] *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*, 84 FR 36886 (July 30, 2019) (*Solar AR5 Final*), and accompanying IDM at Comment 12.
[65] *See* Risen's Comments on Draft Remand at 2-6.

- In contrast, record information provided by Risen demonstrates that the backsheets used in the solar industry are "film" and are thicker than 0.25mm.  Accordingly, Commerce should rely on HTS 3920.62.90.00 to value Risen's backsheets.

- While Commerce claimed that valuing backsheets using an HTS category that covers plates and sheets (*i.e.*, Malaysian imports under HTS 3920.62.1000 (Of Poly(Ethylene Terephthalate):  Plates And Sheets)) is not inconsistent with its prior practice in this proceeding, this statement is based on a misreading of the tariff schedule.  The Thai HTS category that Commerce used to value backsheets in prior segments of this proceeding, Thai HTS 3920.62.00090, is an "Other" HTS category that covers items not covered by the lower numbered HTS categories listed above that number in the HTS.  Since Thai HTS 3920.62.00010 specifically covers plates and sheets, the "Other" Thai HTS 3920.62.00090 does not cover plates and sheets, but covers film.  Accordingly, Commerce's use of Malaysian HTS 3920.62.1000, which covers plates and sheets, to value backsheets is contrary to its established practice in this proceeding.

- In sum, Commerce should determine that Risen's purchasing information and industry information support classifying backsheets as film.  Alternatively, if Commerce determines that the record is ambiguous, it should value backsheets using the average of the AUVs of imports under Malaysian HTS numbers 3920.62.1000 and 3920.62.9000.

*BYD and Canadian Solar:*[66]

- Risen is correct.  The record does not support using import data for Malaysia HTS 3920.62.1000 to value Risen's backsheets and there is no reasonable basis for Commerce to determine Malaysia HTS 3920.62.1000 is applicable.

**Commerce's Position:**

We disagree with the commentors' contention that the record does not support valuing backsheets using Malaysian import data for HTS 3920.62.1000 (PET in plates and sheets) rather than HTS 3920.62.9000 (other PET in non-plates and sheets (including film)).  Despite Risen's claims regarding its purchasing information, marketing materials, and the purpose of the ASTM abstracts, there is only one definition of film on the record.  One of the ASTM abstracts that Commerce placed on the record of this remand relates to ASTM D6988-13.  While ASTM D6988-13 is a guide for determining the thickness of plastic film, the abstract contains a note that "{f}ilm is defined in Terminology (Relating to Plastics) D883 as an optional term for sheeting having a nominal thickness no greater than 0.25mm (0.010 in.)."[67]  This definition of "film" is consistent with the second abstract that Commerce placed on the record of this remand which indicates that the term "sheeting" is used for plastic that is thicker than 0.25 mm.  That abstract is for ASTM D4801-08(2016) which is identified as the "Standard Specification for Polyethylene Sheeting in Thickness of 0.25 mm (0.010 in.) and Greater."[68]  The title, "Standard Specification for Polyethylene Sheeting in Thickness of 0.25 mm (0.010 in.) and Greater," denotes that sheeting is a term used when the plastic is thicker than 0.25 mm.  Although Risen contends that these abstracts are less specific to the backsheets used in solar modules than its

---

[66] *See* Canadian Solar and BYD's Comments on Draft Remand at 4.
[67] *See* Commerce April 22, 2022 Memorandum at Attachment II.
[68] *Id*.

purchasing records and the solar industry marketing materials, the definition of film does not

come from ASTM D6988-13 or ASTM D4801-08(2016), but from ASTM standard D883 –

"D883Terminology Relating to Plastics. Note 1- Film is defined in Terminology D883 as an

optional term for sheeting having a nominal thickness no greater than 0.25 mm (0.010 in)."[69]

ASTM standard D883 is stated to apply to plastics in general and Risen has failed to cite to any

information to support that this standard would not cover plastic materials used by the solar

industry or used as backsheets in solar modules.[70]

Moreover, Risen's purchase records for backsheets, and the marketing materials that

Risen placed on the record of this remand, are not dispositive of the matter.  First, the

specifications that Risen provided for its backsheets in its purchase records do not specifically

identify the product as sheet or film but simply describe the product as a backsheet.[71]  While the

marketing materials that Risen provided from WSL Solar and 3M identify components of

backsheets as "film," the marketing materials from 3M also identify the multilayer structure that

is formed from those components as a backsheet that is a separate product from film.  For

example, in the following excerpt from 3M marketing materials, the backsheet is referenced as a

separate item from film:

> Yellowing, cracking and loss of gloss … are signs of material degradation
>
> that can affect the backsheet encapsulant as well as the fluoropolymer film
>
> … .  In UV testing where competing films and backsheets showed obvious
>
> degradation … .[72]

---

[69] *Id*.

[70] *See* Risen's Comments on Draft Remand at 4 (claiming that the ASTM abstract "is not the same product as used by Risen or in the solar industry at all" in reference to ASTM D4801-08(2016) but not addressing ASTM standard D883 - Terminology Relating to Plastics).

[71] *See* Risen's Section D Response at Exhibit D-38.

[72] See Risen's May 2, 2022 Response at Exhibit 8.

Thus, the marketing materials do not clearly show that the multilayered backsheet is film.  Nor is it evident from these marketing materials that companies in the industry adhere to the precise technical definitions of "film" and "sheet" when using the term "film" to refer to a product or merely use the term "film" based on its general meaning, which is thin flexible plastic.

In contrast, the ASTM abstract identifies a clear technical definition of film, based on the thickness of the plastic, according to a standards organization.  Based on this definition, and [

] of Risen's backsheets, the record supports Commerce's valuation of Risen's backsheets as sheet under Malaysian HTS 3920.62.10.00, rather than as film under HTS 3920.62.90.00.[73]  In the absence of any information regarding how film and sheet are defined in the Malaysian HTS, we find the best information on the record for distinguishing film from sheet to select an appropriate surrogate value for backsheet is the ASTM information that Commerce placed on the record of the remand.

Lastly, we agree with Risen that the Thai HTS category that we used to value Risen's backsheets in the previous administrative review in this proceeding, Thai HTS 3920.6290090, does not cover plates and sheets.  While we did not use import data for plates and sheets of plastic to value backsheets in the previous administrative review in this proceeding, in that review, unlike this remand, we did not have the ASTM definition of film on the record.  Because we now have the ASTM definition of film on the record and Risen's backsheets do not meet that definition,[74] we valued Risen's backsheets in this remand using import data for plates and sheets of plastic (Malaysian HTS 3920.62.1000).  This is consistent with our valuation of backsheets in

---

[73] *See* Commerce April 22, 2022 Memorandum at Attachment II; *see also* Risen's Section D Response at Exhibit D-38.
[74] *Id.*

the 2018-2019 and 2019-2020 AD administrative reviews in this proceeding where ASTM information, and other information on the thicknesses of film and sheet were on the records.[75]

## D.    EVA

The Court also held that Commerce's valuation of EVA using import values for plates and sheets (*i.e.*, Malaysian imports of HTS 3920.10.1900 ("Polymers Of Ethylene:  Plates And Sheets:  Other Than Rigid")), was not supported by substantial evidence and it remanded this decision to Commerce for reconsideration or further explanation.[76]  Although Commerce considered Risen's EVA to be sheet, rather than film, because sheets and plates are thicker, and more rigid, than film, and Risen's EVA is over 0.5mm thick, the Court held that Commerce failed to address detracting record evidence that Risen's EVA is flexible and described as film.[77] As a result, the Court stated that Commerce should address detracting record evidence and explain its departure from its historical treatment of EVA should it continue to value EVA using Malaysian HTS 3920.10.1900.[78]

**Analysis**

We have continued to value Risen's EVA using the AUV of Malaysian imports under HTS 3920.10.1900 ("Polymers Of Ethylene:  Plates And Sheets:  Other Than Rigid") rather than

---

[75] *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019*, 86 FR 58871 (October 25, 2021) (*Solar AR7 Final*), and accompanying IDM at Comment 13; *see also Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020*, 87 FR 38379 (June 27, 2022) (*Solar AR8 Final*), and accompanying IDM at Comment 10.
[76] *See Risen Energy Remand Order* at 28 and 30-31.
[77] *Id.* at 31 (citing Risen's Letter "Crystalline Silicon Photovoltaic Cells from the People's Republic of China – Risen Final Surrogate Value Submission – Part II," dated January 2, 2020 (Risen's Final SV Submission), at Exhibit SV2-12).  We infer that the Court was relying on the diagram demonstrating the EVA was in rolls, but the Court did not specify to what in this Exhibit it was referring.
[78] *Id.* at 30-31.

the AUV of Malaysian imports under HTS 3920.10.9000 ("Polymers Of Ethylene - Other").  The four-digit HTS number 39.20 covers plates, sheets, film, foil, and strips of plastic.

As stated above, prior to this remand, nothing on the record defined the terms plate, sheet, or film.  Thus, we placed ASTM Abstracts that define sheet and film on the remand record.[79]  These ASTM Abstracts note that "{f}ilm is defined in Terminology <u>D883</u> {(terminology relating to plastics)} as an optional term for sheeting having a nominal thickness no greater than 0.25 mm (0.010 in)."[80]  Risen reported that its EVA is over 0.5 mm thick.[81]  Accordingly, Risen's EVA does not meet the ASTM definition of film.[82]  Risen's EVA is twice as thick as the maximum thickness of film as defined in the ASTM Abstracts.  Further, no other physical characteristic of Risen's EVA demonstrates that it should be classified as film rather than sheet.

Even if Risen's EVA comes in rolls, this does not demonstrate that it is film, rather than sheet.  Malaysia HTS category 39.19 covers "Self-adhesive plates, sheets, film, foil, tape, strip and other flat shapes, of plastic, whether or not in rolls."[83]  Thus, both plastic sheets and plastic film may be in rolls.

Further, while Risen described its EVA as flexible, the Malaysia HTS category that we selected to value EVA covers "Polymers Of Ethylene:  Plates And Sheets:  *Other Than Rigid*" (emphasis added).  Hence, the category that we selected to value Risen's EVA covers flexible products, such as Risen's EVA.

---

[79] *See* Commerce April 22, 2022 Memorandum at Attachment II.
[80] *Id.*
[81] *See* Risen's October 17, 2019 Submission at Exhibit S2-1.
[82] *See* Commerce April 22, 2022 Memorandum at Attachment II.
[83] *See* Risen's January 2, 2020 submission - Part I at Exhibit SV2-4.

Additionally, using Malaysian imports under HTS 3920.10.1900 ("Polymers Of Ethylene:  Plates And Sheets:  Other Than Rigid") to value Risen's EVA is consistent with the surrogate source from Thailand that we used to value EVA in the previous administrative review in this proceeding (*i.e.*, HTS 3920.10.1900 (Polymers Of Ethylene: Plates And Sheets: Other Than Rigid) because the descriptions of both HTS categories are the same.[84]  Thus, there is no difference in the HTS categories used to value EVA in the 2016-2017 and 2017-2018 administrative reviews.[85]

Finally, other than the ASTM Abstracts discussed above, there is no other definition of sheet and film on the record.  Risen submitted marketing materials for EVA products in which the product is described as both "EVA film" and "EVA sheets."[86]  Thus, Risen's submission is not dispositive with respect to whether EVA is film or sheet.  Hence, the term "film" in marketing materials or on product packaging, and the term "film" as used by Risen to describe its EVA product may not correspond to the term "film" used in the Malaysian HTS or in other generally recognized authoritative sources such as an industry or trade association, a professional organization, or a standards organization.  Moreover, in the underlying review, Risen described its EVA as "sheet," rather than "film," which provides further indication of the informal and imprecise nature of the terms "sheet" and "film" as used in commercial activity.[87]

---

[84] *See* Risen's January 2, 2020 submission - Part I at Exhibit SV2-7.  While HTSs may differ beyond the sixth digit, for the EVA in question, Malaysia and Thailand classify imports using the same HTS and have the same descriptions.

[85] *Id*.

[86] *See* Risen's May 2, 2022 Response at Exhibit 7.

[87] *See* Risen's Section D Response at Exhibit D-7.

**Interested Parties' Comments:**

*Risen*:[88]

- The ASTM abstracts that Commerce placed on the record of this remand to distinguish film from sheet based on thickness:  (1) are not specifically applicable to the terms "film" and "sheet" as used in the Malaysian HTS; (2) are not specific to the plastic products used in the solar industry; and (3) do not define film and sheet based on thickness, but suggest that the term sheet may be used when the plastic is over 0.25mm thick.

- In contrast, the factual information placed on the record of this remand by Risen, which is specific to the EVA used by Risen and specific to the solar industry, shows that EVA is described as film even when it is thicker than 0.25mm.[89]  Specifications from 3M company indicate that EVA is considered film in the solar industry and can be from 0.42-0.65mm thick.[90]  Accordingly, Commerce should value EVA using the value of imports under Malaysian HTS 3920.10.9000, which covers film.

- Commerce incorrectly stated that it relied on Thai HTS 3920.10.1900 to value EVA in the 2016-2017 AD administrative review in this proceeding (as noted above Commerce used Malaysian HTS 3920.10.1900 to value Risen's EVA in the AD administrative review subject to this remand).  Commerce actually used Thai HTS 3920.10.000.90 (which has the same description as Malaysian HTS 3920.10.9000) to value Risen's EVA in the 2015-2016 and 2016-2017 AD administrative reviews in this proceeding.  This fact supports using Malaysian HTS 3920.10.9000 to value EVA in the AD administrative review subject to this remand.[91]

[88] *See* Risen's Comments on Draft Remand at 5-7.
[89] *Id.* at 5-6 (citing Risen's Final SV Submission at Exhibit SV-2-12).
[90] *Id.* at 6 (citing Risen's May 2, 2022 Response at Exhibit 7).
[91] *Id.* (citing Risen's January 2, 2020 submission - Part I at Exhibit SV2-7).

- In sum, Commerce should determine that Risen's purchasing information and industry information on the record of this remand support classifying EVA as film. Alternatively, if Commerce determines that the record is ambiguous, it should value EVA using the average of the AUVs of imports under Malaysian HTS numbers 3920.10.9000 and 3920.10.1900.

*BYD and Canadian Solar:*[92]

- Risen is correct. The record does not support using import values under Malaysia HTS 3920.10.1900 to value Risen's EVA.

**Commerce's Position:**

We disagree with BYD, Canadian Solar, and Risen, in part. While Risen claimed that the ASTM abstracts that Commerce placed on the record of this remand to distinguish film from sheet based on thickness are not specific to the Malaysian HTS or the solar industry, the definition of film that we placed on the record is in ASTM standard D883 – "Terminology Relating to Plastics."[93] Simply by its title, this is a broad standard covering plastics. There is no evidence on the record that this standard is limited to only certain types of plastics or that it does not cover plastic materials used by the solar industry or used as EVA in solar modules. Moreover, contrary to Risen's claim that the ASTM standard does not define film and sheet based on thickness, but simply suggests that the term "sheet" may be used when the plastic is over 0.25mm thick, the abstract for ASTM standard ASTM D6988 contains a note that specifically states that "{f}ilm is *defined* in Terminology <u>D883</u> {(terminology relating to plastics)} as an *optional term for sheeting* having a nominal thickness no greater than 0.25 mm

---

[92] *See* Canadian Solar and BYD's Comments on Draft Remand at 5.
[93] *See* Commerce April 22, 2022 Memorandum at Attachment II.

(0.010 in)."[94]  Hence, ASTM standard D883 does not simply suggest when the term "film" may be used, but provides a definition of film based on the thickness of the plastic sheeting.

Although Risen claimed that the factual information that it submitted shows that EVA is described as film even when it is thicker than 0.25mm., the marketing materials that Risen submitted from Sino Voltaics also contain references to EVA as sheets.  Specifically, the marketing materials contain the statement that "{o}nce the EVA *sheets* have been laminated, the ethylene vinyl acetate {EVA} *sheets* play an important role in preventing humidity and dirt {sic} penetrating the solar panels."[95] References to both EVA film and EVA sheets in these marketing materials indicate an informal, imprecise use of the terms "film" and "sheet" in the industry that does not provide an appropriate record basis for Commerce to determine whether Risen's EVA should be valued as a film or sheet.  While Risen's purchase information may contain the phrase "EVA film," Risen itself described its EVA as "sheet," rather than "film."[96]  Risen also argued that its EVA is film because it is flexible.  However, the Malaysian HTS category that we used to value Risen's EVA indicates that plates and sheets can also be flexible (HTS 3920.10.1900 ("Polymers Of Ethylene:  Plates And Sheets:  *Other Than Rigid*").  Thus, the record demonstrates that flexibility is not a characteristic that distinguishes film from sheet.

Given the foregoing, and in the absence of any information regarding how film and sheet are defined in the Malaysian HTS, we find the best information on the record for distinguishing film from sheet is the ASTM information that Commerce placed on the record of the remand. The ASTM abstract identifies a clear technical definition of film, based on the thickness of the plastic, according to a standards organization.  Based on this definition, and [          ] of

---

[94] *Id*. (emphasis added).
[95] *See* Risen's May 2, 2022 Response at Exhibit 7 (emphasis added).
[96] *See* Risen's Section D Response at Exhibit D-7.

Risen's EVA, its EVA does not meet the definition of film.[97]  Thus, we have continued to value Risen's EVA using the AUV of Malaysian imports under HTS 3920.10.1900 ("Polymers Of Ethylene:  Plates And Sheets:  Other Than Rigid") rather than the AUV of Malaysian imports under HTS 3920.10.9000 ("Polymers Of Ethylene - Other").

Lastly, while we agree with Risen that we used import data for Thai HTS 3920.10.000.90, rather than Thai HTS 3920.10.1900, to value Risen's EVA in the previous administrative review of this proceeding,[98] we disagree with Risen's claim that "the history of {Commerce's} classification practice with respect to {EVA} also supports Risen's classification" (i.e., Risen advocates valuing EVA in this remand using import data for Malaysia HTS 3920.10.9000 which it claims has the same description as Thai HTS 3920.10.000.90).[99] Thai HTS 3920.10.000.90 is an "Other" HTS category that covers plates, sheets, film, foil and strips of polymers of ethylene.[100]  Malaysia HTS 3920.10.9000 is an "Other" HTS category that covers polymers of ethylene in forms other than plates and sheets (i.e., it is a category that covers film, not plates and sheets).[101]  Hence, in the prior administrative review, Commerce did not use a Thai HTS category that covered film, and not plates and sheets, but rather, it used a Thai HTS category that encompassed plates, sheets and film, etc.  Thus, contrary to Risen's claim, the history of Commerce's classification practice with respect to EVA does not support valuing EVA using the HTS category suggested by Risen.  Because Malaysia, unlike Thailand, has separate HTS categories for polymers of ethylene in plates and sheets and polymers of ethylene – other (which covers film), and we now have the ASTM definition of film on the

---

[97] See Commerce April 22, 2022 Memorandum at Attachment II; see also Risen's October 17, 2019 Submission at Exhibit S2-1.
[98] See Risen's January 2, 2020 submission - Part I at Exhibit SV2-7.
[99] See Risen's Comments on Draft Remand at 6.
[100] The only subcategories under Thai HTS 3920.10 (polymers of ethylene) are 39201000001, which covers tape used in the manufacture of telephonic or electric wire and the other category 39201000090.
[101] See Risen's January 2, 2020 submission - Part I at Exhibit SV2-4.

record and Risen's EVA does not meet the definition of film, we valued Risen's EVA in this remand using import data for polymers of ethylene in plates and sheets (Malaysian imports under HTS 3920.10.1900 ("Polymers Of Ethylene:  Plates And Sheets:  Other Than Rigid"), rather than import data for polymers of ethylene – other (which in the Malaysian HTS covers film, but not plates and sheets).  This is consistent with our valuation of EVA in the 2018-2019 and 2019-2020 AD administrative reviews of this proceeding where ASTM information, and other information on the thicknesses of film and sheet were on the records.[102]

E.    **Separate Rate Calculation**

In the underlying review, Commerce applied the weighted-average dumping margins calculated for Risen and Trina to the separate rate respondents.  Because the separate rate is determined by, and derivative of, the rate calculated for Risen and Trina, and the Court remanded certain aspects of those rates as unsupported by substantial evidence, the Court also remanded for reconsideration Commerce's separate rate calculation.[103]

**Analysis**

Consistent with the Court's remand order, Commerce has reconsidered its separate rate calculation in light of the changes made to the mandatory respondents' dumping margins and revised it accordingly.[104]  We assigned the revised separate rate to separate rate respondents participating in this litigation.

---

[102] *See Solar AR7 Final* IDM at Comment 12; *see also Solar AR8 Final* IDM at Comment 11.
[103] *See Risen Energy Remand Order* at 42.
[104] *See* Memorandum, "Draft Results of Redetermination Pursuant to Court Order:  Calculation of the Final Dumping Margin for Separate Rate Respondents," dated June 10, 2022.

**Interested Parties' Comments:**

*BYD and Canadian Solar:*[105]

- Commerce properly revised its separate rate calculation based on changes made to the mandatory respondents' dumping margins in this remand.

**Commerce's Position:**

Consistent with the *Draft Remand*, and for the reasons explained above, we assigned a dumping margin to the separate rate respondents that participated in this litigation equal to the weighted average[106] of the dumping margins that we calculated for the mandatory respondents in these final remand results.

## III.   FINAL RESULTS OF REDETERMINATION

In accordance with the *Risen Energy Remand Order*, Commerce has reconsidered the issues remanded by the Court, and for the reasons explained above:  (1) we have determined to use partial neutral facts available, rather than partial AFA, in calculating Risen and Trina's weighted-average dumping margins; (2) we have determined to value Risen and Trina's silver paste based on Malaysian imports under HTS 7106.92 rather than HTS 7115.90.10; and (3) we have continued to value Risen's backsheets using Malaysian imports under HTS 3920.62.1000 and Risen's EVA using Malaysian imports under HTS 3920.10.19.  After making the changes identified in items (1) and (2) above, we calculated the dumping margins listed in the table below in our *Draft Remand* which are unchanged in these final remand results.

---

[105] *See* Canadian Solar and BYD's Comments on Draft Remand at 5.
[106] We weight averaged the respondents' dumping margins using the publicly ranged total value of their sales of subject merchandise during the POR of the underlying administrative review.

| Exporter | Weighted-Average Dumping Margin (Percent) |
|---|---|
| Risen (Wuhai) New Energy Co., Ltd./Zhejiang Twinsel Electronic Technology Co., Ltd./Risen (Luoyang) New Energy Co., Ltd./Jiujiang Shengchao Xinye Technology Co., Ltd./Jiujiang Shengzhao Xinye Trade Co., Ltd. Ruichang Branch/Risen Energy (Hong Kong) Co., Ltd.; Risen Energy Co., Ltd. | 19.20[107] |
| Trina Solar Co., Ltd./Trina Solar (Changzhou) Science & Technology Co., Ltd./Yancheng Trina Guoneng Photovoltaic Technology Co., Ltd./Turpan Trina Solar Energy Co., Ltd./Hubei Trina Solar Energy Co., Ltd./Trina Solar (Hefei) Science & Technology Co., Ltd./Changzhou Trina Hezhong Photoelectric Co., Ltd. | 25.18[108] |
| Anji DaSol Solar Energy Science & Technology Co., Ltd | 23.02[109] |
| Canadian Solar International Limited/Canadian Solar Manufacturing (Changshu), Inc./Canadian Solar Manufacturing (Luoyang) Inc./ CSI Cells Co., Ltd/ CSI-GCL Solar Manufacturing (YanCheng) Co., Ltd/CSI Solar Power (China) Inc. (Canadian Solar) | 23.02 |
| JA Solar Technology Yangzhou Co., Ltd. | 23.02 |
| Shanghai JA Solar Technology Co., Ltd. | 23.02 |
| JingAo Solar Co., Ltd. | 23.02 |
| Shanghai BYD Co., Ltd. | 23.02 |
| Shenzhen Sungold Solar Co., Ltd. | 23.02 |
| Wuxi Tianran Photovoltaic Co., Ltd. | 23.02 |
| Yingli Energy (China) Company Limited/Baoding Tianwei Yingli New Energy Resources Co., Ltd./Tianjin Yingli New Energy Resources Co., Ltd./Hengshui Yingli New Energy Resources Co., Ltd./Lixian Yingli New Energy Resources Co., Ltd./Baoding Jiasheng Photovoltaic Technology Co., Ltd./Beijing Tianneng Yingli New Energy Resources Co., Ltd./Hainan Yingli New Energy Resources Co., Ltd./Shenzhen Yingli New Energy Resources Co., Ltd | 23.02 |

---

[107] *See* Memorandum, "Draft Results of Redetermination Pursuant to Court Order: Analysis Memorandum for Risen," dated June 10, 2022, unchanged and adopted for this final remand redetermination.

[108] *See* Memorandum, "Draft Results of Redetermination Pursuant to Court Order: Analysis Memorandum for Trina," dated June 10, 2022, unchanged and adopted for this final remand redetermination.

[109] *See* Memorandum, "Draft Results of Redetermination Pursuant to Court Order: Calculation of the Final Dumping Margin for Separate Rate Respondents," dated June 10, 2022, unchanged and adopted for this final remand redetermination.

Should the Court affirm these final results of redetermination, we intend to amend the final results of the underlying review to reflect the results of this redetermination and issue applicable related customs instructions to U.S. Customs and Border Protection.

7/5/2022

X ~~Ryan Majerus~~

Signed by: RYAN MAJERUS
Ryan Majerus
Deputy Assistant Secretary
  for Policy and Negotiations