UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| RISEN ENERGY CO., LTD., <br><br> Plaintiff, <br><br> and <br><br> TRINA SOLAR CO., LTD., JA SOLAR TECHNOLOGY YANGZHOU CO., LTD., ET AL., <br><br> Consolidated Plaintiffs, <br><br> and <br><br> SHANGHAI BYD., LTD., ET AL., <br><br> Plaintiff-Intervenors, <br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> SUNPOWER MANUFACTURING OREGON, LLC, <br><br> Defendant-Intervenor. | Consol. Court No. 20-03743 |

## __ORDER__

Upon consideration of parties' comments regarding the remand redetermination,

defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained in its entirety.


Dated: _____, 2022
     New York, NY

_____
                            JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

| | | |
|---|---|---|
| RISEN ENERGY CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TRINA SOLAR CO., LTD., JA SOLAR TECHNOLOGY | ) | |
| YANGZHOU CO., LTD., ET AL., | ) | |
| | ) | |
| Consolidated Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | Consol. Court No. 20-03743 |
| SHANGHAI BYD., LTD., ET AL., | ) | |
| | ) | **PUBLIC VERSION** |
| Plaintiff-Intervenors, | ) | |
| v. | ) | Business Proprietary Information |
| | ) | (BPI) Denoted by Brackets [ ] on |
| THE UNITED STATES, | ) | Page 8. |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SUNPOWER MANUFACTURING OREGON, LLC, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' COMMENTS ON REMAND RESULTS

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:                                    JOSHUA E. KURLAND
LESLIE M. LEWIS                                Trial Attorney
Attorney                                       U.S. Department of Justice
Office of the Chief Counsel                    Civil Division
for Trade Enforcement and Compliance           Commercial Litigation Branch
U.S. Department of Commerce                     P.O. Box 480
Washington, D.C.                               Ben Franklin Station
                                               Washington, D.C. 20044
                                               Tel: (202) 616-0477
                                               Email: Joshua.E.Kurland@usdoj.gov

October 6, 2022                                *Attorneys for Defendant United States*

# TABLE OF CONTENTS

BACKGROUND ..................................................................................................................2

I.      Commerce's Determination And The Court's Remand Order ...........................................2

II.     Commerce's Remand Results...........................................................................................3

ARGUMENT ....................................................................................................................................5

I.      Standard Of Review........................................................................................................6

II.     Commerce's Remand Redetermination Is Supported By Substantial Evidence And
        Otherwise Lawful............................................................................................................7

        A.      The Court Should Sustain Commerce's Unopposed Remand
                Determinations Applying Neutral Facts Available And Revising Its
                Valuation Of Silver Paste............................................................................................7

        B.      Commerce's Valuation Of Backsheet Is Supported By Substantial Evidence
                And Otherwise Lawful..................................................................................................7

        C.      Commerce's Valuation Of EVA Is Supported By Substantial Evidence And
                Otherwise Lawful........................................................................................................12

        D.      Commerce's Revised Separate Rate Calculation Is Supported By
                Substantial Evidence And Otherwise Lawful ...........................................................16

CONCLUSION................................................................................................................................16

# **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938)................................................................................... 6

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966)................................................................................... 6

*Gov't of Argentina v. United States,*
    542 F. Supp. 3d 1380 (Ct. Int'l Trade 2021) ............................................... 9

*Haixing Jingmei Chem. Prod. Sales Co. v. United States,*
    335 F. Supp. 3d 1330 (Ct. Int'l Trade 2018) ............................................... 8

*I.N.S. v. Elias-Zacarias,*
    502 U.S. 478 (1992)................................................................................... 6

*Jiaxing Brother Fastener Co. v. United States,*
    380 F. Supp. 3d 1343 (Ct. Int'l Trade 2019) ............................................. 11

*MacLean-Fogg Co. v. United States,*
    100 F. Supp. 3d 1349 ................................................................................. 6

*Motor Vehicle Mfrs. Ass'n v. State Farm,*
    463 U.S. 29 (1983)................................................................................... 11

*Nippon Steel Corp. v. United States,*
    458 F.3d 1345 (Fed. Cir. 2006)................................................................... 6

*Qingdao Sea-Line Trading Co. v. United States,*
    766 F.3d 1378 (Fed. Cir. 2014)................................................................. 11

*Risen Energy Co. v. United States,*
    569 F. Supp. 3d 1315 (Ct. Int'l Trade 2022) ....................................... *passim*

*Rust v. Sullivan,*
    500 U.S. 173 (1991)................................................................................. 11

**Statutes**

19 U.S.C. § 1516..................................................................................................... 6

19 U.S.C. § 1677............................................................................................... 2, 3, 4

**Administrative Determinations**

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China,*
     85 Fed. Reg. 62,275 (Dep't of Commerce Oct. 2, 2020)...........................................................2

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China,*
     85 Fed. Reg. 79,165 (Dep't Commerce Dec. 9, 2020) ..........................................................2, 3

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China,*
     86 Fed. Reg. 58,871 (Dep't of Commerce Oct. 25, 2021).........................................................12

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |  |
|---|---|---|
| RISEN ENERGY CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TRINA SOLAR CO., LTD., JA SOLAR TECHNOLOGY YANGZHOU CO., LTD., ET AL., | ) | |
| | ) | |
| Consolidated Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | Consol. Court No. 20-03743 |
| SHANGHAI BYD., LTD., ET AL., | ) | |
| | ) | **PUBLIC VERSION** |
| Plaintiff-Intervenors, | ) | |
| v. | ) | Business Proprietary Information (BPI) Denoted by Brackets [ ] on Page 8. |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SUNPOWER MANUFACTURING OREGON, LLC, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' COMMENTS ON REMAND RESULTS

Defendant, the United States, respectfully responds to the comments filed by plaintiff, Risen Energy Co., Ltd. (Risen), by consolidated plaintiffs, Trina Solar Co., Ltd. (Trina) and JA Solar Technology Yangzhou Co., Ltd., *et al.* (JA Solar), and by plaintiff-intervenors Shanghai BYD, Ltd., *et al.* (Shanghai BYD) (collectively, plaintiffs), regarding the Department of Commerce's remand redetermination in this matter.  *See* Final Results of Redetermination

Pursuant to Court Remand, ECF Nos. 137, 138 (July 5, 2022) (Remand Results). We respectfully request that the Court sustain the remand results and enter judgment for the United States because Commerce has fully complied with this Court's remand order, and because the remand results are supported by substantial evidence and otherwise lawful. *See Risen Energy Co. v. United States,* 569 F. Supp. 3d 1315 (Ct. Int'l Trade 2022); Confidential Slip Op. 22-33, ECF No. 121 (April 4, 2022); Public Slip Op. 22-33, ECF No. 132 (April 12, 2022).

## **BACKGROUND**

### I.    **Commerce's Determination And The Court's Remand Order**

In October 2020, Commerce issued its final results of the 2017-2018 antidumping duty administrative review covering crystalline silicon photovoltaic cells, whether or not assembled into modules, from China. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, 85 Fed. Reg. 62,275 (Dep't of Commerce Oct. 2, 2020) (P.R. 478), and accompanying Issues and Decision Memorandum (IDM) (P.R. 468) (*Final Results*), as amended by *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, 85 Fed. Reg. 79,165 (Dep't Commerce Dec. 9, 2020) (P.R. 508) (*Amended Final Results*).[1]

Pursuant to 19 U.S.C. § 1677e, Commerce applied partial facts available with adverse inferences (AFA) in determining consumption quantities for unreported factors of production to calculate dumping margins for the mandatory respondents, Risen and Trina, because certain of their unaffiliated solar cell and module suppliers had failed to provide this factor of production information, which was necessary for Commerce to conduct the administrative review. IDM at 10-17. In applying partial AFA, Commerce found that both the unaffiliated suppliers and the

---

[1] "P.R. ___" and "C.R. ___" refer to the public and confidential administrative record; "R.P.R. ___" and "R.C.R. ___" refer to the public and confidential remand record, respectively.

PUBLIC VERSION

mandatory respondents had failed to cooperate pursuant to 19 U.S.C. § 1677e(b).  *Id.*  Commerce also relied on Malaysian import data to value silver paste, backsheet, and EVA film.  *Id*. at 17-24, 45-46.  Commerce assigned a weighted-average dumping margin to separate rate respondents based on the dumping margins that it had calculated for the mandatory respondents.  *Id*. at 1-2.

After correcting ministerial errors, Commerce assigned weighted-average dumping margins of 100.79 and 92.52 percent to Risen and Trina, respectively, and of 95.50 percent to the separate rate respondents.  *Amended Final Results*, 85 Fed. Reg. at 79,166.

Plaintiffs challenged certain aspects of Commerce's final and amended final results.  In April 2022, the Court sustained Commerce's final results, in part, and remanded, in part.  *Risen Energy*, 569 F. Supp. 3d at 1320.  The Court instructed Commerce (1) to reconsider, or further explain, its application of partial AFA to calculate Trina's and Risen's dumping margins; (2) to reconsider, or further explain, the Malaysian import data Commerce used to value the mandatory respondents' silver paste, backsheet, and ethylene vinyl acetate (EVA) inputs; and (3) to reconsider the separate rate calculation.  *See id.* at 1327-32, 1335-38.

## II.    Commerce's Remand Results

In response to the Court's remand order, Commerce placed factual information on the record of the remand proceeding and provided interested parties an opportunity to comment and to submit information to rebut, clarify, or correct the factual information.  Memorandum, "Reopening the Record and Opportunity to Submit Comment and Factual Information" (Apr. 21, 2022) (R.P.R. 1-2) (Apr. 21 Memo); Memorandum, "Reopening the Record and Opportunity to Submit Comment and Factual Information – Inclusion of Missing Attachment" (Apr. 22, 2022) (R.P.R. 3-4) (Apr. 22 Memo).  Specifically, Commerce placed on the record Global Trade Atlas (GTA) import data for Malaysian Harmonized Tariff Schedule (HTS) number 7106.92, and

American Society for Testing and Materials (ASTM) abstracts from ASTM D4801 and ASTM D6988 relating to backsheet and EVA.  *Id*.  In response to Commerce's invitation either to comment or to submit rebuttal factual information, Risen, Trina, and Shanghai BYD each responded.  Trina Letter, "Comments on Factual Information Submitted by Commerce" (May 2, 2022) (R.P.R. 7-8); Risen Letter, "Rebuttal {To} New Factual Information Commerce Placed on the Record" (May 2, 2022) (Risen May 2, 2022 Response) (R.P.R. 9-42); Shanghai BYD Letter, "Comments on NFI from Commerce" (May 2, 2022 (R.P.R. 43).

On June 10, 2022, Commerce issued draft remand results.  Memorandum, "Draft Results of Redetermination Pursuant to Court Order" (June 10, 2022) (R.P.R. 44-47; R.C.R. 1-12) (Draft Remand).  Various parties commented on the draft remand results, and Commerce addressed the comments in its final remand results filed with the Court.

On July 5, 2022, Commerce issued its remand results.  *See* Remand Results, ECF Nos. 137, 138.  Commerce explained that, after reconsideration and under respectful protest, it had determined not to apply an adverse inference in selecting among the facts otherwise available to supply the missing factor of production data when calculating Risen's and Trina's dumping margins.  Remand Results at 3-7.  Without objection, however, Commerce continued to find the use of facts available warranted pursuant to 19 U.S.C. §§ 1677e(a)(1) and (a)(2)(A)-(B).  *Id*.  Accordingly, Commerce applied partial neutral facts available in calculating both Risen's and Trina's dumping margins, using the average consumption rates that the companies reported for each input to substitute for the missing factor of production information.  *Id*.

With respect to surrogate values, Commerce explained that, after reconsideration of its silver paste valuation in light of the Court's remand order, it determined to value silver paste using Malaysian import data pertaining to Malaysian HTS 7106.92, rather than Malaysian HTS

7115.90.10.  *Id.* at 7-12.  Commerce explained that its redetermination is based on the facts that the manufactured silver imports under Malaysian HTS 7106.92 are more specific to silver paste than the articles imported under Malaysian HTS 7115.90.10, and that the average unit value (AUV) of review period imports under Malaysian HTS 7106.92 is more consistent with the benchmark data on the record than Malaysian HTS 7115.90.10.  *Id.*  Commerce also continued to value the backsheet and EVA using Malaysian import data under Malaysian HTS 3920.62.1000 and HTS 3920.62.1900, respectively.  *Id.* at 12-19, 20-27.

Given these determinations, Commerce calculated a 19.20 percent dumping margin for Risen, and a 25.18 percent dumping margin for Trina.  *Id.* at 29.  Commerce also explained that it reconsidered its separate rate calculation in light of its changes to the mandatory respondents' dumping margins, and revised the separate rate respondents' dumping margin to 23.02, for those companies participating in this litigation.  *Id.* at 27-29.

## ARGUMENT

Commerce's remand results are supported by substantial evidence and otherwise lawful. First, no party challenges (1) Commerce's application of partial neutral facts available to the missing factor of production information for Risen and Trina, (2) Commerce's valuation of silver paste using data under Malaysian HTS 7106.92, and (3) Commerce's consequent determination to reconsider the separate rates.  Because these three determinations are consistent with this Court's remand order and supported by substantial record evidence, the Court should sustain Commerce's remand results on these issues.

Likewise, the Court should sustain Commerce's surrogate value selections for backsheet and EVA using the average unit value of Malaysian HTS 3920.62.1000 and HTS 3920.10.1900, respectively.  Both surrogate value selections are consistent with the Court's remand order for

Commerce to either reconsider, or further explain, its selection of the relevant Malaysian import data. To further explain its selection, Commerce placed on the remand record precise technical definitions to distinguish between sheet and film, and no party rebutted that information. Based on the remand record, Commerce reasonably determined to continue to value backsheet and EVA using the Malaysian import data for sheets, as opposed to that for film. Thus, the Court should sustain the remand results in their entirety.

I.     <u>**Standard Of Review**</u>

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less than the weight of the evidence" and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted). Indeed, when Congress entrusts an agency to administer a statute demanding inherently fact-intensive inquiries, the agency's conclusions may be set aside only if the record evidence is "so compelling that no reasonable factfinder" could reach the same conclusion. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992). Thus, a party challenging a determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted).

## II.     Commerce's Remand Redetermination Is Supported By Substantial Evidence And Otherwise Lawful

### A.     The Court Should Sustain Commerce's Unopposed Remand Determinations Applying Neutral Facts Available And Revising Its Valuation Of Silver Paste

As an initial matter, the Court should sustain Commerce's determinations on remand to apply partial neutral facts available to the missing factor of production information for Risen and Trina and to value silver paste using data stemming from Malaysian HTS 7106.92.  *See* Remand Results at 4-12.  Commerce's remand results concerning these issues comply with the Court's remand order, are supported by substantial record evidence, and are unchallenged by any party. *See* Risen Cmts. 1; Trina Cmts. 2; Shanghai BYD Cmts. 2; JA Solar Cmts. 2 (supporting Commerce's neutral facts available and silver paste remand determinations).

### B.     Commerce's Valuation Of Backsheet Is Supported By Substantial Evidence And Otherwise Lawful

Commerce's remand results regarding its surrogate valuation for backsheet likewise should be sustained.  The Court remanded Commerce's backsheet valuation for reconsideration or further explanation.  *Risen Energy*, 569 F. Supp. 3d at 1331-32.  In doing so, the Court held that Commerce did not address certain evidence that Risen had placed on the record and did not explain why its surrogate value selection was reasonable in light of evidence showing that "Risen's backsheet satisfies Commerce's definition of film."  *Id*. at 1331.  The Court directed that, if Commerce continued to value backsheet using Malaysia HTS 3920.62.1000, it should address the evidence and historical treatment detracting from its determination.  *Id*. at 1331-32.

On remand, Commerce determined to continue to value backsheet using the AUV of Malaysian imports under HTS 3920.62.1000, covering polyethylene in plates and sheets, as distinct from the HTS subheading covering polyethylene in non-plates and sheets (including film).  Remand Results at 12-15, 17-20.  As the Court instructed, Commerce addressed

detracting evidence, and explained why its selection of HTS 3920.62.1000 to value backsheet is reasonable in light of the ASTM abstracts that Commerce placed on the remand record.  *See id.*

Specifically, Commerce placed on the record ASTM Abstract D6988, the standard guide for determination of the thickness of plastic film test specimens, and ASTM Abstract D4801, the standard specification for polyethylene sheeting in thickness of 0.25 mm (0.010 in.) and greater. Apr. 22 Memo at Att. II – ASTM Abstracts (R.P.R. 3) (specifying that ASTM Abstract D4801 is from ASTM Book of Standards Volume 08.02 and ASTM Abstract D6988 is from the ASTM Book of Standards Volume 08.03).  The ASTM abstracts define "sheet" and "film" based on thickness.  *See id.*  Commerce reasoned that Risen's backsheets—which have [

]—meet the ASTM definition of polyethylene plastic "sheet" having a thickness of 0.25 mm or greater, as distinguished from that for "film" having a thickness no greater than 0.25 mm.  *See* Remand Results 13-14.  Commerce also addressed issues concerning its determinations in other segments of this proceeding and parties' arguments claiming that information that Risen had placed on the record trumped the ASTM abstracts.  *Id.* at 14-15, 17-20.  Commerce's determination on remand thus complies with the Court's remand order and should be sustained.

Plaintiffs' arguments challenging Commerce's remand determination with respect to backsheet lack merit.  *See* Risen Cmts. 1-4; Shanghai BYD Cmts. 5-8; JA Solar Cmts. 2.  Risen argues that marketing materials that it placed on the record show that backsheet "is referred to as film, even when thicker than 0.25 mm."  Risen Cmts. 2.  However, the materials Risen placed on the record do not invalidate the weight that Commerce placed on the ASTM standard definitions included in the record.  *Cf. Haixing Jingmei Chem. Prod. Sales Co. v. United States*, 335 F. Supp. 3d 1330, 1346 (Ct. Int'l Trade 2018) ("mere disagreement" with Commerce's weighing of

evidence insufficient basis for challenge); *Gov't of Argentina v. United States*, 542 F. Supp. 3d 1380, 1395 (Ct. Int'l Trade 2021) (same).  As Commerce explained, there is no evidence that the terms used in Risen's marketing materials correspond to the terms "sheet" and "film" as used in the Malaysian HTS, or in other generally recognized authoritative sources such as materials from an industry or trade association, a professional organization, or standards organization.  Remand Results at 14.[2]  Moreover, the marketing materials provide no indication that companies in the industry adhere to the precise technical definitions of "film" and "sheet" when using the term "film" to refer to a product, as distinguished from using the term "film" based on its general meaning connoting thin flexible plastic.  *See id*. at 18-19.  The marketing materials also appear to distinguish between multilayered "backsheet" and "film" components comprising the backsheet.  *See id.*  Thus, the marketing materials are not dispositive of the matter.

A precise definition is critical when the record contains two surrogate value options for valuing backsheet that are distinguished by millimeters.  *See id*. at 12-13.  Unlike the materials that Risen placed on the record, the ASTM abstracts are derived from an authoritative standards organization and provide a clear technical definition of film, based on thickness of the plastic.  *See id*. at 19.  Therefore, Risen's information does not negate the weight of the ASTM evidence, which shows that, between two close options, the specifications for Risen's backsheet are consistent with the record definition of sheet rather than film.  Commerce reasonably determined to rely on clear standards that are published by an authoritative standards organization and that define sheet and film based on thickness.  *See id.*

---

[2] Indeed, in placing the ASTM abstracts on the record, Commerce opened the record for parties to submit new factual information to rebut, clarify, or correct that information.  No party submitted evidence to rebut the ASTM abstracts, nor did any party submit evidence regarding the meaning of plates, sheets, and film as used in the Malaysian HTS.  *See id.*

Plaintiffs also assert that the ASTM abstracts are not intended for purposes of distinguishing between film and sheet, do not correspond to the Malaysian HTS, and are not specific to the solar industry.  *See* Risen Cmts. 4-5; Shanghai BYD Cmts. 6-7.  However, the record is devoid of any information as to how film and sheet are defined in the Malaysian HTS.  Further, to the extent plaintiffs argue that classification should rely on sources specifically intended for distinguishing between film and sheet, they identify no record evidence that would satisfy that exacting standard.  *See* Shanghai BYD Cmts. 6-7.  Indeed, the information Risen placed on the record does not address that issue.  Nevertheless, Commerce explained that the ASTM abstracts include a "clear technical definition of film" from ASTM standard D883 that applies to plastics in general.  *See* Remand Results at 17-18, 19.  Despite their objections, plaintiffs fail to cite any evidence demonstrating that the ASTM D883 definition is intended not to cover plastic materials when they are used by the solar industry, or used as backsheet in solar modules.  *See id*. at 18.  Accordingly, Commerce reasonably found that the ASTM standards information is the best information on the record to distinguish film from sheet in selecting an appropriate surrogate value for Risen's backsheet.  *See id.* at 19.

Plaintiffs additionally contend that Commerce's selection of a Malaysian HTS category covering plates and sheets to value Risen's backsheet is unsupported by the record because Commerce used a Thai HTS "Other" category (meaning a category covering items not covered by another HTS category, such as film) in a prior administrative review.  *See* Risen Cmts. 4; Shanghai BYD Cmts. 7.[3]  It is well-established, however, that each administrative review stands

---

[3] Shanghai BYD contends that Commerce's use of Malaysian HTS 3920.62.1000 is contrary to the agency's "established practice" in this proceeding.  Shanghai BYD Cmts. 7.  However, Commerce acknowledged that its use of Malaysian HTS 3920.62.1000 is a departure from the prior administrative review and provided a reasoned explanation for doing so based on the record.  *See* Remand Results at 19-20.  Accordingly, Shanghai BYD's argument lacks merit.

on its own record, which may require different results.  *See Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014) ("each administrative record is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record").  This Court has also recognized that Commerce may depart from a prior practice in implementing the antidumping duty statute if it offers a reasoned explanation for its change.  *See Jiaxing Brother Fastener Co. v. United States*, 380 F. Supp. 3d 1343, 1364 (Ct. Int'l Trade 2019) (citing *Rust v. Sullivan*, 500 U.S. 173, 187 (1991); *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983)).  Commerce adhered to these principles, explaining that when it used the Thai HTS "Other" category in the prior review, it did not have the ASTM definition of film on the record.  *See* Remand Results at 19.  Thus, the record in the prior review contained different facts upon which Commerce based its conclusions and surrogate value selections.  *See id*.

On remand in this review, by contrast, the record included the ASTM standards for sheet and film, defined by thickness, enabling Commerce to distinguish between the two surrogate value options offered by the Malaysian import data.  Commerce explained that "{b}ecause we now have the ASTM definition of film on the record and Risen's backsheets do not meet that definition, we valued Risen's backsheets in this remand using import data for plates and sheets of plastic (Malaysian HTS 3920.62.1000)."  Remand Results at 19.  Commerce thus provided a reasoned explanation for its change from its selection of the Thai HTS "Other" category in the prior administrative review, and plaintiffs' contentions that Commerce's selection is unsupported by the record because of its departure from a prior administrative review should be rejected.

Finally, Risen also criticizes Commerce for justifying its departure from its previous treatment of backsheet based on its actions in subsequent reviews.  Risen Cmts. 4.  Risen is correct that Commerce's selection of Malaysian HTS 3920.62.1000 as the best information to

value backsheet is different from the Thai data it previously used.  *See* Remand Results at 19.  As we explained above, however, that change is lawful because Commerce provided a reasoned explanation for the change based on the different record in this review.  *See id*. at 19-20.  The fact that Commerce added that its determination on remand is consistent with its determinations in the 2018-2019 and 2019-2020 reviews does not detract from Commerce's justification, which is based on the record of this case.  Moreover, given the timing of the remand in relation to other segments of this proceeding, Commerce's accounting for actions it has taken in subsequent reviews is neither unreasonable nor unlawful.[4]

## C.      Commerce's Valuation Of EVA Is Supported By Substantial Evidence And Otherwise Lawful

As it did with backsheet, the Court remanded Commerce's valuation of ethylene vinyl acetate (EVA) for reconsideration or additional explanation consistent with the Court's remand order.  *Risen Energy*, 569 F. Supp. 3d at 1331-32.  In its decision, the Court held that Commerce had failed to address certain detracting record evidence, or to explain why its valuation of EVA with Malaysian import values for plates and sheets was reasonable in light of evidence showing that Risen's EVA is flexible and described as film.  *See id*.  The Court directed that, if Commerce continued to value EVA using Malaysian HTS 3920.10.1900 (covering "Polymers of Ethylene: Plates and Sheets: Other Than Rigid"), it should address record evidence detracting from its determination and explain its departure from its historical treatment of EVA.  *See id*.

---

[4] Contrary to Risen's suggestion, Commerce also had information from ASTM on the records of the 2018-2019 and 2019-2020 reviews.  *See*, *e.g.*, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, 86 Fed. Reg. 58,871 (Dep't of Commerce Oct. 25, 2021), at IDM Cmt. 13 ("Based on ASTM standards (indicating that plastic film is less than 0.25mm thick while plastic sheet is 0.25mm thick or thicker), and the thickness of Risen's backsheet (which has been treated as business proprietary information), we consider Risen's backsheet to be plastic sheet, not plastic film.").

On remand, Commerce determined to continue to value EVA using the average unit value of Malaysian imports under HTS 3920.10.1900, rather than Malaysian HTS 3920.10.9000, (covering polymers of ethylene – other), after placing ASTM abstract standard definitions for film and sheet on the record and determining that Risen's EVA has a thickness consistent with sheet, rather than film. *See* Remand Results at 20-27. As the Court had instructed, Commerce addressed detracting evidence and explained its change from its past treatment of EVA. *See id*. Nevertheless, plaintiffs argue that Commerce's determination is not supported by the record. *See* Risen Cmts. 4-6; Shanghai BYD Cmts. 8-9; JA Solar Cmts. 2. Contrary to plaintiffs' claims, Commerce's determination complies with the Court's remand order and is supported by substantial evidence.

Risen contends that Commerce's EVA surrogate value selection is unsupported because the ASTM abstract thickness standards on which Commerce relied are merely suggestions that are not specific to the Malaysian HTS or the solar industry. Risen Cmts. 5. As we explained above, however, the definition of film that Commerce placed on the record stems from ASTM standard D883 concerning "Terminology Relating to Plastics"—which, as its title indicates, is a broad standard covering plastics. *See* Remand Results at 24. Nothing on the record suggests that this ASTM standard is limited to only certain types of plastics, or that it does not cover plastic materials when used by the solar industry as EVA in solar modules. *See id*. Additionally, the ASTM abstract specifically states that "{f}ilm is *defined* . . . as an optional term for sheeting having a nominal thickness of no greater than 0.25 mm (0.010 in)." *Id*. at 24-25 (citing Apr. 22 Memo at Att. II – ASTM Abstracts (R.P.R. 3)). Thus, contrary to Risen's claim, ASTM standard D883 provides a *definition* of film based on the thickness of the plastic sheeting. *See id*. Further, the fact that ASTM standards are not specific to the Malaysian HTS does not negate

Commerce's weighing of this evidence because the record is devoid of any information as to how film and sheet are defined in the Malaysian HTS. *See id*. at 25.

Risen claims that specification sheets for Risen's EVA purchases and industry materials it submitted show that Commerce should classify EVA as film. Risen Cmts. 5-6. This claim is based on the name for the product Risen purchases, described as "EVA film," and references to EVA as "film" by solar entities. *Id*. But the materials that Risen submitted are not dispositive of whether EVA is film or sheet because, for example, they describe EVA as both "EVA film" and "EVA sheets." Remand Results at 22, 25 (citing Risen May 2, 2022 Response at Ex. 7 (R.P.R. 9-42)). Indeed, the marketing materials contain the statement that "{o}nce the EVA *sheets* have been laminated, the ethylene vinyl acetate {EVA} *sheets* play an important role in preventing humidity and dirt penetrating the solar panels." *Id.*[5] Commerce also explained that "the term 'film' in marketing materials or on product packaging, and the term 'film' as used by Risen to describe its EVA product may not correspond to the term 'film' used in the Malaysian HTS or in other generally recognized authoritative sources such as an industry or trade association, a professional organization, or a standards organization." *Id*. at 22. Thus, the materials that Risen submitted merely show that Risen and some solar companies may call EVA "film." Without more, Risen's contention does not negate Commerce's finding based on the overall record.

As discussed above, Commerce placed the ASTM standards on the record to provide definitions distinguishing sheet and film precisely because nothing on the record defined the terms beyond general descriptions and imprecise references. *See id*. at 13, 21; *see also id.* at 22 ("{O}ther than the ASTM Abstracts discussed above, there is no other definition of sheet and

---

[5] Likewise, in the underlying review, Risen described its EVA as "sheet," rather than "film," which provides further indication of the informal and imprecise nature of the terms "sheet" and "film" as used in commercial activity. *See id.* at 22, 25 (citing Risen Section D Response at Exhibit D-7 (July 2, 2019) (C.R. 136)).

film on the record.").  Thus, Commerce reasonably determined that the best information on the record for distinguishing film from sheet is the ASTM information that comes from an authoritative standards organization.  *See id.* at 25.  Based on those precise definitions, Commerce lawfully determined that Risen's EVA is consistent with sheet rather than film because its thickness is greater than 0.5 mm, and that no other physical characteristic of the EVA signaled that it should be classified as film rather than sheet.  *See id*. at 21, 25-26.

Relatedly, and contrary to Risen's suggestion that the flexibility of its EVA requires the EVA to be treated as film (Risen Cmts. 5), Commerce specifically observed that the Malaysian HTS category that it selected to value EVA covers "Polymers Of Ethylene: Plates And Sheets: *Other Than Rigid*" (emphasis added).  Remand Results at 21.  Hence, the Malaysian HTS category covers flexible products like Risen's EVA.  *Id.*

Next, Risen correctly asserts that Commerce used Thai HTS 3920.10.000.90 to value Risen's EVA in the previous administrative review.  Risen Cmts. 6; *see also* Remand Results at 26.  However, Risen incorrectly asserts that "the history of {Commerce's} classification practice with respect to {EVA} also supports Risen's classification" such that EVA should be valued using Malaysian HTS 3920.10.9000, which Risen claims has the same description as Thai HTS 3920.10.000.90.  *See* Risen Cmts. 6; Remand Results at 26-27.  As Commerce explained, Thai HTS 3920.10.000.90 is an "Other" HTS category that covers plates, sheets, film, foil, and strips of polymers of ethylene.  *See* Remand Results at 26.  By contrast, Malaysia HTS 3920.10.9000 is an "Other" HTS category that covers ethylene polymers in forms *other than* plates and sheets (*i.e.*, it covers film, but not plates and sheets).  Accordingly, in the prior administrative review, Commerce did not use a Thai HTS category that covered film, and not plates and sheets, "but rather, it used a Thai HTS category that encompassed plates, sheets and film, etc."  *Id*.

Thus, the history of Commerce's classification practice with respect to EVA does not support valuing EVA using Malaysian HTS 3920.10.9000 because Malaysia, unlike Thailand, has separate HTS categories for polymers of ethylene in plates and sheets and polymers of ethylene – other (which covers film). *See id*. at 26-27. Given that Risen's EVA does not meet the record definition of film, Commerce lawfully used Malaysian HTS 3920.10.1900 covering ethylene polymer plates and sheets, rather than a category covering film but not sheets.

Overall, Commerce appropriately considered the information that Risen proffered, its historical practice, and the ASTM standards information that it had placed on the record to reasonably conclude that Risen's EVA should be treated as sheet rather than film. Commerce's determination should thus be sustained.

### D.    Commerce's Revised Separate Rate Calculation Is Supported By Substantial Evidence And Otherwise Lawful

Consistent with the Court's remand order, Commerce reconsidered and revised its separate rate calculation based on its changes to the mandatory respondents' weighted-average dumping margins. Remand Results at 27. The Court should thus sustain the revised rate that Commerce applied to separate rate litigants because it is derivative of the lawful rates that Commerce calculated for Risen and Trina. Because we have demonstrated that Commerce's valuations of Risen's backsheet and EVA are supported by substantial evidence and otherwise lawful, the Court should reject JA Solar's and Shanghai BYD's challenges to the revised separate rate, which depend on their meritless challenges to Commerce's valuation of Risen's backsheet and EVA. *See id*. at 27-28.

### CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand results and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

/s/ Joshua E. Kurland
OF COUNSEL:                         JOSHUA E. KURLAND
LESLIE M. LEWIS                     Senior Trial Counsel
Attorney                           U.S. Department of Justice
Office of the Chief Counsel        Civil Division
for Trade Enforcement and Compliance   Commercial Litigation Branch
U.S. Department of Commerce        P.O. Box 480
Washington, D.C.                   Ben Franklin Station
                                   Washington, D.C. 20044
                                   Telephone: (202) 616-0477
                                   E-mail: Joshua.E.Kurland@usdoj.gov

October 6, 2022                    *Attorneys for Defendant United States*

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that defendant's attached filing complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the motion was prepared, the confidential version of the brief contains a total of 4,823 words.

<u>/s/ Joshua E. Kurland</u>

October 6, 2022